## COLBURN *v.* GRANT.

TRUSTS AND TRUSTEES; LIABILITY OF TRUSTEE FOR DEFALCATION OF HIS CO-TRUSTEE.

A testator in 1872 devised real estate in Newark to his son, C, and to T, a prominent lawyer of that place, in trust to pay the income to the son for life with remainder over, and with discretionary power in the trustees to sell and invest the proceeds. Shortly afterwards the real estate was sold for $27,000, part of which was paid in cash and the remainder in instalments which were collected by T. The son removed to Washington in 1873, leaving the whole trust estate, except $5,000 which came into his hands and there remained intact until his death, "to the collection, management and discretion of T, who handled the same without the co-operation, supervision or knowledge of C, the latter only requiring from T the payment of the income of said estate to him, the said C, as provided by the will." In 1893 T committed suicide, when it was discovered he had squandered the portion of the trust estate in his hands. On a claim against his estate for the amount of the squandered trust fund, C received a dividend of about $3,300, with which he bought an annuity, the remaindermen having released all claim to it. In a suit brought by the remaindermen after the life tenant's death to enforce against his estate the liability claimed to have been incurred by him by reason of the defalcation of his co-trustee, which suit was heard on an agreed statement stating the facts as recited above, it was *held*, affirming

a decree dismissing the bill of complaint, that neither abandonment of discretionary power by a trustee to his co-trustee, nor negligence in the supervision of a trust can be inferred, but must be proved; and that the agreed statement did not contain sufficient proof of either to render C or his estate liable.

No. 952.  Submitted January 16, 1900.  Decided February 7, 1900.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity against the estate of a deceased trustee to enforce a liability on account of the defalcation of his co-trustee. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Franklin H. Mackey* and *Mr. Arthur R. Colburn* for the appellants.

*Mr. W. A. Gordon* and *Mr. J. Holdsworth Gordon* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

This case comes to us by appeal from a decree of the Supreme Court of the District sitting in equity. It was heard in that court upon bill, answer and an agreed statement of facts, which together constitute the record in the case. There is no controversy, therefore, as to the facts, at least as to the substantial facts, upon which a decision is sought; the controversy is as to the inference to be drawn from them. The facts are these:

On May 27, 1872, one Augustus G. P. Colburn died in Newark, in the State of New Jersey, leaving a will, executed two days before his death, whereby he devised to his son George Fitzjames Colburn, who appears to have been his only surviving child, although this is merely matter of inference, for and during his natural life, a certain dwelling house and lot in the city of Newark, with power to the trustees named in the will, who were his said son, George Fitzjames Colburn, and John W. Taylor, Esquire, a prominent lawyer of Newark, to sell the same at any time, and

the proceeds of sale to invest as advantageously as practicable, and the income thereof to pay over to the said son George Fitzjames Colburn during his lifetime. The will further provided that, upon the son's death, the property should go to his wife, if she survived him, for the time of her widowhood; and upon the death of both, to the son's issue in fee simple, if any issue he should leave; and upon the death of the son without leaving issue, which was the contingency that happened, the income of the property or of its proceeds should be paid at stated and convenient times to the brothers and sisters of the testator, and the survivors and survivor of them, in equal shares, and upon the death of all of his brothers and sisters, the principal sum was to vest absolutely in the children of one brother, Hervey Colburn. The said George Fitzjames Colburn was made residuary devisee and legatee of the estate; and this son and John W. Taylor were appointed executors of the will.

Shortly after the death of the testator the real estate mentioned was sold by the executors or trustees under the will, and realized the net sum of twenty-seven thousand dollars, part of which was paid in cash and the remainder in instalments which were collected by the trustee Taylor in course of time. Of the proceeds of sale the sum of five thousand dollars came into the hands of George Fitzjames Colburn, and remained intact with him until his death. He removed in the year 1873, which was the year immediately following his father's death, from Newark to this city of Washington, and died here a widower and without issue in September, 1897. The remainder of the proceeds of sale, amounting to twenty-two thousand dollars, came under the exclusive management and control of the other trustee, John W. Taylor, who, as already stated, was a prominent lawyer in Newark, and was regarded by the general public as a man of business integrity, and as such seems to have had many estates committed to his care. At his death, however, which occurred by his own hand, on November 20, 1893, it was

found that he had squandered all these estates, and among them the portion of the estate of Augustus G. P. Colburn, which had been permitted to remain in his hands.    Excepting the sum of five thousand dollars, which has been mentioned as having been taken charge of by George Fitzjames Colburn himself, the latter left the whole estate, consisting of the sum of twenty-two thousand dollars, as stated, "to the collection, management, and discretion of the said Taylor, who handled the same without the co-operation, supervision or knowledge of the said George Fitzjames Colburn, the latter only requiring from said Taylor the payment of the income of said estate to him, said George Fitzjames Colburn, as provided by said will."

Upon the death of Taylor, George Fitzjames Colburn, as surviving trustee, made claim against Taylor's estate for the amount of the trust fund squandered by him; and upon his claim for twenty-two thousand dollars, he received a dividend of three thousand three hundred and forty-two dollars and forty-five cents ($3,342.45).    It seems to be understood that nothing further is to be had from that source.    To the amount so recovered the children of Hervey Colburn, who had then become entitled to the reversion to it, released all claim in September, 1895; and with it George Fitzjames Colburn purchased an annuity, which he enjoyed until his death two years afterwards.

A fact deemed of some importance by counsel on both sides is that the trustees under the will of Augustus G. P. Colburn acted without bond.    The will is silent on that subject; but the fact is stated in the agreed statement.

Upon the death of George Fitzjames Colburn in 1897, he left a will whereby the defendant, Robert E. Grant, was appointed his executor, and disposition was made of his estate, which consisted entirely of personalty.    In his estate was found the sum of five thousand dollars of the estate of his father which has been mentioned, and which sum was turned over by the executor Grant to the trustee substituted

in the place of George Fitzjames Colburn and John W. Taylor for the estate of Augustus G. P. Colburn upon proceedings instituted for the purpose in the Supreme Court of the District of Columbia, in which proceedings all the parties to this suit were parties, except the said trustee who was therein appointed. Why such trustee was appointed is not quite apparent, since no trust seems to have remained to be performed under the will of Augustus G. P. Colburn; but this is probably unimportant.

As already stated, George Fitzjames Colburn survived his wife, and died without having remarried, and without issue. He survived also all the brothers and sisters of Augustus G. P. Colburn, except one; and that one died three months after him. Thereupon, the interest in this devise or bequest under the will of Augustus G. P. Colburn became vested in the children of the latter's brother Hervey Colburn; and these, joining with the trustee, appointed as above stated, instituted this suit against the executor and the estate of George Fitzjames Colburn to enforce against it the liability claimed to have been incurred by George Fitzjames Colburn as co-trustee by reason of the defalcation of John W. Taylor.

Most of the facts here stated appear in the bill and answer filed in the case, and are made definite by the agreed statement of facts. In the answer, however, it is further stated, although the statement is claimed not to be responsive to anything in the bill of complaint, that the management and control of the trust fund of twenty-two thousand dollars of the estate of Augustus G. P. Colburn was left with John W. Taylor, "with the full knowledge of the parties in interest, and without opposition on their part;" that Taylor "had continued to remit regularly from 1873 to 1893 to said George Fitzjames Colburn the income from said sum of twenty-two thousand dollars under his control, and no reason for doubting his honesty or integrity or as to the proper management of the estate in his possession had ever arisen." And it appears that the estate, or the investment of it, was

in the city of Newark, where Taylor resided and was a prominent lawyer, held in high esteem, while George Fitz-james Colburn resided in the District of Columbia. It is further stated in the answer that never during the lifetime of George Fitzjames Colburn did the children of Hervey Colburn, who were all of full age, make any pretense of holding George Fitzjames Colburn liable for the defalcation of his co-trustee; that on the contrary, the only concern which they exhibited in the matter was that said George Fitzjames Colburn would lose the income which he had previously enjoyed; that it was in order to provide for such loss of income as far as possible that they relinquished all claim to the sum which he had recovered from Taylor's estate; and that the idea of claiming any liability on the part of George Fitzjames Colburn or his estate for the defalcation of Taylor was an afterthought resulting since the death of Colburn from his failure to leave his small estate to the complainants in the cause.

Upon the bill, answer, and the agreed statement of facts, the Supreme Court of the District dismissed the bill; and from the decree of dismissal the present appeal has been prosecuted.

The question in the case is, whether under the circumstances stated, a trustee can be held liable for the malfeasance of his co-trustee.

The principles of law applicable to the case are simple enough, and well settled; and there is no real controversy between the parties in regard to them. The controversy is rather one of fact than of law; or rather it is whether an inference of negligence can be drawn from a certain conceded state of facts.

The law as to the duties and liabilities of co-trustees seems to be well and fully stated by the chancellor of Maryland in the case of *Latrobe* v. *Tiernan,* 2 Md. Chan. Rep. 474, 480, in which it is said:

"The general doctrine does not appear to admit of dispute,

that trustees have all equal power, interest and authority, and can not act separately, as executors may, but must join both in conveyances and receipts. For one trustee can not sell without the other, or make a claim to receive more of the consideration money. As a general rule, says Hill on Trustees, 305, 'trustees can not act separately, but they must all join in any sale, lease, or other disposition of the trust property, and also in receipts for money payable to them in respect of their office.' And the cases, so far as I have been referred to them, are uniform in maintaining this as a general rule. They are referred to in the passage quoted from Hill, and in 2 Story's Equity, section 1280, in the notes. As trustees then are in general required to join in receipts of money and conveyances or other dispositions of the trust estate, they are only responsible for their own acts, and not for the acts of each other, unless they have made some agreement by which they have engaged to be bound for each other, or they have, by their own voluntary co-operation or connivance, enabled some one or more of them to violate the trust."

In the American and English Encyclopedia of Law (1st Ed.), Vol. 27, Art. *Trusts and Trustees*, the law is thus summed up from a consideration of all the authorities:

"The duties and liabilities of the co-trustees are joint, and not individual. Co-trustees may not act independently of one another, nor ignore each other, in the management of the estate. The trustee is entitled to the benefit of the united judgment, discretion and ability of all the trustees selected. For this reason they may not delegate discretionary power among themselves, nor escape responsibility for the safe exercise of the entire trust by distributing the duties among themselves and dividing its responsibilities. With ministerial duties the rule is different. The transaction of the ordinary business of the trust, which involves no special personal fitness in the one who must conduct it, and calls for the exercise of no particular degree of judgment or

16 Ct. App.—9

discretion upon his part, may legally be deputed to one of a number of trustees by the others, and they will be liable for losses only where they have been guilty of negligence in connection with such delegation of power. If trustees may delegate such powers to agents and employes, there can be no reason to forbid them from delegating the performance of like duties to certain of their own uumber.

"A co-trustee can not be held responsible for loss or injury to the estate occurring through the fault of a co-trustee, if he himself has been blameless."

From the agreed statement of facts in this case it appears that the trust estate of Augustus G. P. Colburn, as to the sum of twenty-two thousand dollars of it, "was by the said George Fitzjames Colburn left solely to the collection, management and discretion of the said Taylor, who handled said sum without the co-operation, supervision or knowledge of the said George Fitzjames Colburn, the latter only requiring from said Taylor the payment of the income of said estate to him, said George Fitzjames Colburn, as provided by said will." And it is upon this statement that it is contended on behalf of the appellants that George Fitzjames Colburn improperly abandoned to his co-trustee the discretionary management of the estate vested in both of them jointly, and thereby rendered himself liable to the appellants for the malfeasance of Taylor.

But we fail to find in the agreed statement of the facts sufficient proof of the abandonment of the duties of the trust by George Fitzjames Colburn, or any proof of negligence on his part in the supervision of the trust, in such manner as to render himself or his estate liable.

It is true that it is said in the statement that the trust estate, to the extent of twenty-two thousand dollars, was left by Colburn to "the collection, management, and discretion solely of Taylor," and that Taylor "handled said sum without the co-operation, supervision, or knowledge of Colburn." But this is not sufficient. The statement may be

consistent with the relinquishment only by Colburn of the ministerial duties which he might well have intrusted to Taylor. In order to hold Colburn responsible, there should be some evidence of abandonment by him of the discretionary duties which it was not proper for him to delegate to his co-trustee.

It is very evident that the testator had confidence in Taylor, whom he designates as his friend, and who was in all probability his legal adviser; and the joinder of Taylor in the trust is, under the circumstances, strong evidence that it was the testator's intention that his should be the controlling mind in the management of the trust. And this view is fully corroborated by the fact that Colburn, in view of his own special interest in the trust, and that there was a residuary devise of the trust fund, might not be entirely impartial or entirely judicious in such management. If the real estate which originally constituted the trust fund had remained unsold, and no duty had been imposed on the trustee Taylor other than to collect the rents and to remit them to Colburn in Washington, and this duty had been left exclusively to him, we do not think that it would be reasonable to infer from this fact alone that Colburn had abandoned the trust; and yet in that contingency this would have been the only duty to be performed under the trust, except the payment of taxes and insurance. And all this would necessarily have been under the supervision of Colburn, and subject to his approval and ratification in the acceptance of the rents remitted to him.

When the real estate was sold and the proceeds invested or reinvested, did any different condition arise? It does not anywhere in the record appear how this fund of twenty-two thousand dollars, alleged to have been left to the management of Taylor, was invested. It does not appear that, after having been once invested, there was ever need or occasion for reinvestment. Indeed, it may reasonably be conjectured that the amount remained as a mortgage on

the property sold; and inasmuch as there is nothing to show that such mortgage was ever paid and that the proceeds were reinvested, it would not be unreasonable to assume that the investment remained as it was first placed. At all events, we can not assume the contrary in the absence of proof. We can not assume that the money became due, and that Taylor received it and reinvested it without the concurrence of Colburn, or that he wholly failed to reinvest it and converted it to his own use. That Taylor obtained control of the fund and misappropriated it is very clear; but when or how or under what circumstances he did so, we are not told. For all we know, he may have come into possession of the fund in the last week or the last month of his life; and he may have been the ministerial agent to receive the money when it was due and payable. He may have come properly into possession of it, and the misappropriation may have been an afterthought. We can not infer delinquency on the part of Colburn, when there is no more proof than is contained in this record, that by his abandonment of his trust or by his negligence in the supervision of it, he had put it in the power of his co-trustee to prove faithless in his duty. Abandonment of discretionary power by a trustee to his co-trustee is a fact to be proved by him who alleges it; and so likewise is negligence in the supervision of a trust. Neither abandonment nor negligence is to be implied without satisfactory proof of the fact, or of circumstances sufficient to warrant the inference; and we do not find that proof in the statement of facts contained in this record.

We are of opinion that the conclusion reached by the learned justice who heard this cause in the Supreme Court of the District was right, and that the decree of that court should be *affirmed, with costs. And it is so ordered.*