Estate of John W. Lowell, Deceased.

Argued November 11, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*F. Lyman Windolph,* for appellants.—The profits
made by the executors as a result of their purchases
and sales of real estate are to be regarded as part of
the principal of the testators' estate: McNeel's Estate,
68 Pa. 412; Willing's Estate, 288 Pa. 337; Sloan's
Estate, 254 Pa. 346; Bailey's Estate, 291 Pa. 421;
Kemble's Estate, 201 Pa. 523; Graham's Estate, 198
Pa. 216.

*Harris C. Arnold,* and with him *Howard J. Lowell*
and *John A. Coyle,* for appellee.—The profits in ques-
tion are income under the will: Swentzell's Estate, 294
Pa. 261; Quay's Estate, 253 Pa. 80; Chalfant's Estate,
294 Pa. 331; Oliver's Estate, 136 Pa. 43; Thompson's
Estate, 153 Pa. 332.

OPINION BY LINN, J., January 29, 1930:

This appeal is from the dismissal of a petition of
review after hearing on petition, answer and evidence
produced. The issues were (1) whether profits made
by the executors in certain real estate transactions
were income as the executors had treated them, or
principal; and (2) whether petitioner, who had been
absent from the country when the account was filed,
had had notice in time to be heard at the audit. It
was held that the profits were income within the mean-
ing of the will, and had been paid in accordance with
its terms, and that petitioner had notice; for both

reasons, therefore, the petition was dismissed. Error in both respects is assigned.

The will is dated July 3, 1900. Two days later testator died, leaving surviving a widow and 9 children ranging in age from 13 to 30 years, the youngest being Paul M. Lowell, the appellant. Letters testamentary were granted to three of the children, two daughters and a son, named as executors. They administered the estate during the life of the widow, and after her death, which occurred August 21, 1923, they filed their account (August, 1925) which was confirmed and an adjudication filed September 21, 1925. The petition for review was presented December 9, 1926, by appellant. Thereafter, Lancaster Trust Company, trustee named in decedent's will, obtained "leave to join in said petition as trustee of the said Paul M. Lowell."

1. Were the profits in question income in the sense in which testator used the word income? The following quotation from the opinion of the learned court below sufficiently states the contents and meaning of the will for present purposes:

"The first thought in testator's mind was that the home shall be continued after his death, to be kept up for his wife and children, and he expressed this thought in the second item of the will.

"This is the first and dominant intent of the testator and everything else is subservient to it. To carry out the purpose of keeping up and maintaining the home is the first charge on the executors. In the third item testator gives his entire estate, real and personal, to his executors, 'In trust to hold, preserve, and manage the same ...... and to pay over the entire net income of the estate, as it accrues to the person who shall for the time being be the head or manager of the family home according to the direction and appointment which I have above made, to be by such head or manager applied according to his or her best judgment for the sup-

port and maintenance and comfort of such persons as may be entitled to be members of said home according to the provisions of this will. I empower my executors or the survivor of them, in their discretion, to sell any or all of my real estate ...... and further in their discretion, to reinvest the proceeds of such sales in other real estate and to resell and reconvey any purchases thus made.'

"The fourth item relates to the payment of board to the head or manager of the home by the sons who may become self-sustaining and remain at home, unless they are attending school or college in Lancaster City, fixes the price to be paid per week; provides that sons under age not attending school shall pay for their board and clothing; and further directs this last provision shall not apply to any son who might be incapacitated.

"The fifth item directs that any child who misbehaves or becomes obnoxious shall be denied any support 'out of the fund provided for the maintenance of said home.'

"The sixth item provides for the final distribution of the estate at the death of the widow, and all the shares of the children are placed in trust during life with remainder to their issue, and further making it a spendthrift trust.

"The seventh item relates to a possible refusal of the widow to elect to take under the will, and in case she elects to take against the will directs an immediate distribution of the estate.

"The eighth item gives each child the right to dispose of the principal of his or her share by will."

The rule of construction to be applied has been frequently stated, recently, in Swentzell's Estate, 294 Pa. 261, 264, as follows: " 'While we should search for the intent of the testator only within the four corners of the will, yet, when we come to consider the will and interpret its meaning we must do so in the

light of all the circumstances by which testator was surrounded when he made it; to this end, his family, and the amount and character of his property, may and ought to be taken into consideration': Frisbie's Est., 266 Pa. 574, 578; Mayer's Est., 289 Pa. 407.''

So examining the record, we have the following: At his death, two days after making the will, 4 of his 9 surviving children were attending school; 2 were paying board and were living at home. He was engaged in the retail leather and harness business. He left a balance of personalty of nearly $4,000 (not a deficit as was stated in Lowell's Estate, 92 Pa. Superior Ct. 492). He also left two parcels of real estate, one, assessed for taxes at $3,210, occupied by the family and producing no revenue; the other, assessed for taxes at $6,000, and subject to a mortgage of $3,500, produced an annual net income of $253.35. Now it is obvious that the annual net income on the $4,000 balance of personalty, added to the sum of $253.35 received from the real estate, (together with what might be received for board at $3 a week) would not be sufficient to maintain the home and support and maintain the widow and children as directed in the will. The simple question then becomes this: Did he intend that any gain or profit made by the executors in dealing in real estate as he authorized them to do, should be used, in addition to the small income referred to, for the support and maintenance of his family, or did he intend that the power conferred on his executors to deal in real estate should be used by them to increase the principal of that trust for the ultimate benefit of his children's issue or their legatees? To ask the question is to answer it. And no help can be obtained by considering cases discussing technical definitions of principal and income. On the record the question is susceptible of no other answer consistent with effectuating testator's purpose than that reached by the

learned court below; to accept the other view and treat the profits as an increase of principal for the benefit of remote remaindermen would have left an income too small to carry out the primary intention expressed in the will; there is evidence that it was insufficient, as it was; testator cannot have intended that his small principal should be hazarded in real estate dealing to the possible detriment of his wife and children for the benefit of remote remaindermen, though willing to risk it for the benefit of his immediate family. See generally Park's Estate, 173 Pa. 190; Quay's Estate, 253 Pa. 80; Chalfant's Estate, 294 Pa. 331.

We quote the following from the opinion of the learned court below: "From the death of the testator in 1900 to the death of the widow in 1923 the executors assumed the active management of the estate. The home on North Prince Street was continued, kept up and maintained under the headship of the widow assisted by her daughters, all the income derived from the real estate transactions paid over to the widow and by her expended for repairs and improvements and for the maintenance and education of the children in the home as provided in the general and dominant scheme of the testator. It is regretable the executors did not keep an accurate account of the receipts, profits and gains in the administration of the trust, together with the amounts paid over to the widow as manager of the home. This it seems was not done, but the testimony conclusively shows that all such income, gains and profits were paid to the widow or by her direction and used in the maintenance and for the purposes of the home as provided in testator's will ...... In order to increase the income required for the maintenance of the home for the widow and nine children they made a number of purchases and sales of other real estate under the specific power given them in the will. They borrowed money, they bought houses,

they traded houses, they sold houses, thus conducting a series of real estate operations extending over a period of years, making in all a profit above referred to. These real estate transactions are fully set out in the petition and answer. There is no dispute about them and we do not deem it necessary for our purpose to relate them in detail. In all there were six such transactions and forty-six houses were bought and sold."

The Lancaster Trust Company has shown no ground for review. It had notice of the filing of the account and opportunity to be, and in fact was, advised of everything that occurred of record thereafter. As to Paul M. Lowell, we understand the following from the opinion of the learned court below to be a finding of fact, and, as it is supported by evidence, is conclusive that on the second of the two questions involved he had no better standing than on the first: "Though controverted, it may satisfactorily be found from the evidence that petitioner as well as his trustee had actual and constructive notice of the settlement of the estate, and that all the contentions now made could and should have been made at the audit."

The decree is affirmed at the cost of appellant, Paul M. Lowell.