**AMERICAN SECURITY & TRUST CO. et al. v. FROST et al.**

No. 7481.

United States Court of Appeals for the District of Columbia.

Argued May 9, 1940.

Decided Nov. 25, 1940.

Petition for Rehearing Denied Dec. 16, 1940.

284

Frederic D. McKenney, John S. Flannery, G. Bowdoin Craighill, and John E. Larson, all of Washington, D. C., for appellant.

John A. Kratz, Norman B. Frost, Frederic N. Towers, Conrad H. Syme, and James C. Wilkes, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

GRONER, C. J.

The appeal is from a decree of the District Court construing a will and ordering distribution of certain proceeds of testatrix' estate as "income" to the life beneficiaries of a residuary trust rather than as principal to be added to the corpus.

The will, executed December 30, 1935, is that of Mary Harlan Lincoln, who died March 31, 1937, leaving two daughters, two grandsons, and one granddaughter. After various specific provisions, the will created a residuary trust with three trustees, the income to go to the children and grandchildren for life, and the corpus ultimately to be distributed to any direct descendants of the testatrix living at the time specified for its final distribution to them. If there were no such descendants at that time, the corpus was to be divided among the First Church of Christ Scientist in Boston, the American Red Cross, and Iowa Wesleyan College. Item Eleventh of the will authorized the executors and trustees "To retain as part of the principal of the trust estate hereby created any shares of stock or bonds or other investments of which I may be possessed at the time of my demise; to decide finally any question that may arise as to what constitutes income and what principal,—it being my wish, however, that whenever feasible their decision be in favor of the life beneficiaries named herein; * * *." The issues relate to the applicability of this provision to two items of assets of the estate, consisting of "administration income" and stock dividends.

To pay funeral expenses, debts, legacies, taxes and costs of administration, the executors sold during the course of administration securities which yielded $835,715.28. Prior to sale, these securities produced an income of $38,018.84. During the administration the estate also received 500 shares of new common stock in the Continental Illinois National Bank and Trust Company as a 25 per cent dividend on the 2,000 shares of the bank's common stock held by testatrix at the time of her death.

The testatrix nominated the American Security and Trust Company, Norman B. Frost, and Frederic N. Towers, as executors and trustees under the will, and they have qualified and are acting as such. The corporate trustee is the appellant, and the individual trustees are appellees.

The two individual executors and trustees, Frost and Towers, decided that the $38,018.84 and the 500 shares of stock were income which should be distributed to the life beneficiaries. The trust company disagreed, and contended that the property should be added to the corpus of the trust. As the trust company declined to join in a proceeding to obtain instructions from the court, it was made a defendant in this action in which the individual trustees ask that the court construe the will with particular reference to the power therein conferred upon the executors thereof and trustees thereunder to decide finally any question that may arise as to what constitutes income and what principal. A special master found that the $38,018.84 was "income," but that the 500 shares of stock were "principal." The trial court approved the master's findings as to the $38,018.84, but held that the 500 shares of stock also should be distributed to the life beneficiaries. The trust company is the only appellant.

The question is whether, considered in connection with the whole will, Item Eleventh empowers the trustees to allocate the funds and stock in question to the life beneficiaries as income.

When the will is entirely silent on what shall constitute corpus and what income, contains no provision as to how that question shall be determined, and merely directs that income be distributed in one manner and corpus in another, the question is determined in accordance with rules of construction established by law. Thus, in such a case, it has long been the established law of the District of Columbia that stock dividends shall be distributed as corpus. Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 34 L.Ed. 525; Lanston v. Lanston, 53 App.D.C. 340, 290 F. 315. And since Proctor v. American Securities & Trust Co., 69 App.D.C. 70, 98 F.2d 599, it has been settled that "administration income" shall be disposed of likewise.

While it is true these are rules of construction, it is also true they are rules which affect the disposition of property by will in the District of Columbia and as such must control whenever appropriate in the interest of certainty. Testatrix was a resident of the District, and her will was prepared by experienced counsel. She is presumed to have been familiar with the fact that certain rules had been announced and would be adopted from time to time with respect to the disposition of various items in the administration of trusts. She is also presumed to have intended these rules to govern in the interpretation of her will unless she expressed a contrary intention.

The conceded facts demonstrate that the particular stock dividend in question, as well as the administrative fund, under the settled rules to which we have just referred, constitute corpus and not income unless a contrary intention appears from the whole will or unless the language in paragraph 11 is held to confer on the trustees discretionary power to reach a different result. We are of opinion neither of these conditions exists. Mrs. Lincoln's will, after providing in Clauses 1 to 6, inclusive, for certain special gifts to each of her two daughters and her granddaughter and for small gifts to several others, reads: "All the rest, residue and remainder of my estate of every kind whatsoever and wheresoever situate I give, devise and bequeath unto my trustees hereinafter named, their survivors or survivor and successors or successor, in trust, nevertheless, to invest and reinvest the principal and collect the income thereof and out of the gross income to pay all taxes and other legal charges and expenses attending the execution of the trust; and out of the net income to make the following payments, at convenient and regular intervals * * *".

Then follows a distribution of the income among the daughters and grandchildren and others, and Clause 8 provides: "I direct my trustees to hold the principal of my residuary estate intact for the purposes hereinbefore expressed until the death of the survivor of my two daughters, Mary Lincoln Isham and Jessie Lincoln Randolph, at which time I direct said trustees to pay over to each of my grandchildren then living the sum of One Hundred Thousand Dollars ($100,000) in cash, free and clear of all trusts; and I direct my said trustees to hold the balance of my residuary estate

intact for the purposes hereinbefore expressed until the expiration of twenty-one years from the death of the survivor of my two daughters * * * and three grandchildren * * *".

Then follows a provision for distribution of the estate per stirpes among the issue of the three grandchildren. If at any time there should be a complete failure of grandchildren and their issue competent to take, then the property should go to the daughters or the survivor of them, or if neither were then living, to certain named charities.

There is nothing in any of these clauses which even suggests an intention to depart from the rules which we have shown to exist in the District of Columbia. Whatever contrary intent exists—if it exists at all—must be found in Clause 11, and we shall, therefore, confine ourselves to considering the effect of the words of that paragraph, which gives the trustees power "to decide finally any question that may arise as to what constitutes income and what principal".

The learned trial judge was of opinion that the quoted language was sufficiently broad to permit, in the discretion of the trustees, the distribution of the "fund" and the "dividend" among the life beneficiaries. He conceded that to do this would involve a determination contrary to a local rule of construction, but was of opinion the rule should yield to the expressed intention of the testatrix. While without doubt that view would be correct in a proper case, we nevertheless think that his interpretation of the language of the paragraph is too broad. To say that Clause 11 empowers the trustees to "decide" contrary to local "rules of construction", proves too much. In a sense, every item of property is controlled by a "rule of construction". E. g., bonds received from the original estate would be corpus, the interest on those bonds, income. This is a "rule of construction" derived from the customs of the community. Surely, it would not be said that under the power given in Mrs. Lincoln's will, the trustees could override this rule. And yet if they may override some rules of construction and not others, there would be complicated questions of degree, e. g., whether one rule or another was so certain that the trustees must not overstep it. We think the will was intended to be more certain than this. It does not empower the trustees to decide what is

income and what is principal, but only to decide "any question" that may arise in that respect. Doubtless a question may arise in respect to many items on the borderline, but a "question" should not and cannot arise except where there is a reasonable doubt. Where, as in the instant case, the exact status of the "fund" and of the dividend has been determined by judicial decisions, no question can arise because there is no proper place for doubt. To say in such circumstances that the trustees are authorized to assume a doubt where there is none and thus to declare something to be income which under judicial decisions is principal, would open the whole will to such revision and change as they might think wise or desirable. The correct rule to be followed is stated by a New York court in Matter of Talbot's Estate, 170 Misc. 138, 9 N.Y.S.2d 806, 812. In that case power was given the trustees "to determine" whether any moneys, stocks, or securities received by them were to be considered as capital or income. The purpose of the trust was to maintain a farm as a vacation spot for children. The corpus was insufficient to maintain the project. The trustees held $14,000 cash "conceded to be income as a matter of fact and law". They desired instructions on whether they could "determine" this sum to be capital and so increase the corpus and carry out the project. In answering this, the court said: "In the first paragraph of clause 'twelfth' the trustees were given authority 'to determine all questions and matters of doubt arising in the execution of the trusts'. These words indicate what the testator had in mind, when in the forepart of the same paragraph he authorized his trustees to determine whether any moneys, stocks or securities are to be considered as capital or income. In other words, we cannot assume that this testator intended to violate any of the settled rules of law in giving this authority to his trustees, but rather to authorize them to come to a conclusion upon matters of doubt, whether in the characterization of receipts of money, stocks or securities as capital or income, or in any other connection, and this determination by the trustees upon any question about which there could be reasonable doubt, arrived at genuinely and not arbitrarily [cases], would be binding upon all persons interested; * * *."

■ In short, the reasoning in that case was that the right to determine arises only when there is a genuine *question* as to the category in which the fund or stock, as the case may be, properly falls. In such a case under a provision like the one here the trustees might very reasonably and properly decide it, on the ground that, lacking a positive and definite guide, there is difference of opinion requiring the exercise of discretion. Numerous illustrations might easily be given of cases in which a question might properly arise, and in those instances the grant of discretion in the will would apply, but since in this jurisdiction the answer is established—in the absence of a contrary intent expressed in the will—so far as the particular fund and the particular shares of stock are concerned, obviously no proper ground is left on which to base a question and consequently no ground for the exercise of a discretion. See, also, In re Matthews' Will, 255 App.Div. 80, 5 N.Y. S.2d 707, 712.

The rule on stock dividends was established long before the transactions now involved. The rule on "administration income" was not settled by this court until about six weeks after the bill in the present case was filed. However, the logic of the decision in the Proctor case is so inescapable that we think no question could have arisen. The testatrix provided that the residue be kept intact as corpus and that only income *of the residue* be given to the life beneficiaries. Since the amount used to pay debts and legacies is not and cannot be considered part of the residue, the income thereof cannot be considered income of the residue.

Cases relied on by appellees, while interesting, are distinguishable because the power given to trustees was either expressed in terms specifically applicable to the item involved or expressed so broadly as to be practically a power of appointment.

■ Since we hold that the trustees had no discretion in the premises, we have not discussed the further question whether a majority of the trustees could make a binding determination, but if the question were still in the case, we should feel disposed to say that all three trustees must concur in the exercise of the power given. Winslow v. Baltimore & O. R. Co., 188 U.S. 646, 23 S.Ct. 443, 47 L.Ed. 635; Wilbur v. Almy, 12 How. 180, 13 L.Ed. 944; Ubhoff v. Brandenburg, 26 App.D.C. 3; Colburn v. Grant, 16 App.D.C. 107, affirmed 181 U.S. 601, 21 S.Ct. 737, 45 L.Ed. 1021; Cooper v. Federal National Bank of Shawnee,

175 Okl. 610, 53 P.2d 678; Kramme v. Mewshaw, 147 Md. 535, 128 A. 468; Matter of Johnson's Will, Sur.Ct., 123 Misc. 834, 207 N.Y.S. 66; 2 Scott on Trusts, § 194; Restatement of Trusts, § 194.

Reversed; costs to be paid by the estate.

RUTLEDGE, Associate Justice ·(dissenting).

The question is whether the testatrix intended by Item Eleventh to confer upon her trustees a narrowly limited discretion to decide only unsettled legal questions or, on the contrary, to give them a broader and more discretionary power which would permit them, to some extent, to distribute as income what would otherwise go as principal and vice versa. I think the latter was her expressed wish, from the language of the clause, its context in Item Eleventh and the will as a whole, the circumstances in which it was executed, the purposes the testatrix had in mind, and the more nearly applicable authorities. As presented here, the question is whether the testatrix intended to bind her fiduciaries' discretion by the rules of construction concerning stock dividends and administration income which would be applied if her will had been entirely silent.

These rules are not "thou shalt nots."[1] They merely create presumptive declarations of intent when the testator omits to disclose his own. They give way to his contrary intention when he sufficiently expresses or indicates it.[2] They afford no help as to what constitutes a sufficient expression or indication of contrary intention. That must be determined from the will and the circumstances of its execution as must any other question of intention. The will here is not silent, but the question remains whether Item Eleventh discloses an intention to permit the fiduciaries to disregard the rules of construction.

When the. will directs that stock dividends or "administration income" or any other fund or property specifically described, which under the presumptive rules would go as corpus or as income, shall be distributed in a manner contrary to them, the direction is given effect.[3] That is true also·when the will empowers trustees to determine whether funds specifically designated shall be distributed as income or as principal.[4] It is not necessary for the testator to make the decision himself. He may delegate that to others.[5] This is analogous to what is commonly done under powers of appointment[6] and of interpreta-

---

[1] In Proctor v. American Security & Trust Co., 1938, 69 App.D.C. 70, 72, 98 F.2d 599, 601, it is said that "There is nothing in the will to indicate that testator would prefer the first life beneficiaries to receive a larger sum during the administration of the estate than thereafter" * * *."

In Gibbons v. Mahon, 1890, 136 U.S. 549, 559, 10 S.Ct. 1057, 1058, 34 L.Ed. 525, the Court said: " * * * the intention of the testator, so far as manifested by him, must of course control; but when he has given no special direction upon the question as to what shall be considered principal and what income, he must be presumed to have had in view the lawful power of the corporation over the use and apportionment of its earnings, and to have intended that the determination of that question should depend upon the regular action of the corporation with regard to all its shares."

[2] See for example the express provision in the will which was diversely interpreted in Colt v. Duggan, S.D.N.Y. 1938, 25 F.Supp. 268, and In re Talbot's Will, Sur.Ct.1939, 170 Misc. 138, 9 N.Y. S.2d 806.

[3] Cf. Chase National Bank v. Chicago Title & Trust Co., Sup.Ct.1935, 155 Misc.

61, 279 N.Y.S. 327, affirmed, 1935, 246 App.Div. 201, 284 N.Y.S. 472, affirmed, 1936, 271 N.Y. 602, 3 N.E.2d 205; Colt v. Duggan, S.D.N.Y.1938, 25 F.Supp. 268; In re Talbot's Will, Sur.Ct.1939, 170 Misc. 138, 9 N.Y.S.2d 806; In re Lowell's Estate, 1929, 98 Pa.Super. 22.

[4] Ibid.

[5] "A settlor of a trust must know that unless he says something to the contrary in his trust instrument, the court's classification will be followed in the administration of his trust. We see no good reason why he cannot be permitted to do that which the court itself can do by way of classification and also to delegate the power of classification to his trustee. If the delegation of power is comprehensive and sufficient, the court must respect it and make effectual the expressed intent of the settlor." Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 630, 118 A.L.R. 834.

[6] Cf. Roberdeau v. Roberdeau, 1806, Fed.Cas.No.11,888, 1 Cranch C.C.(1 D.C.) 305; Colt v. Duggan, S.D.N.Y.1938, 25 F.Supp. 268; Frankel v. Farmers' Loan & Trust Co., 1912, 152 App.Div. 58, 136 N.Y.S. 703, affirmed, 1913, 209 N.Y. 553, 103 N.E. 1124; In re Matthews' Will, 1938, 255 App.Div. 80, 5 N.Y.S.2d 707.

288

tion.[7] So long therefore as the testator specifies the particular funds which shall or may be distributed contrary to the rules of presumption, the will rather than the rules controls.

But when the will omits to specify the particular assets, and makes the direction or creates the power generally, there is more difficulty. No doubt the testator might direct that all income, except specified funds, be distributed as corpus, or vice versa, and thus achieve a form of generality which would be effective. But if no funds or property are specifically described, whether by way of direction or of exception to it, the generality of the power raises difficulties like those which appear in Boyden v. Stevens, 1934, 285 Mass. 176, 188 N.E. 741. However, under the more persuasive and conclusive authorities, these difficulties do not nullify the power or require that it be whittled down to the narrowest possible scope.

In Mayberry v. Carey, 1929, 268 Mass. 255, 167 N.E. 281, 282, the provision of the will was: "I give my executor * * * and the trustee or trustees of each and every trust created by my will, the right to decide what is capital, what is income and what is net income, and whether expenses shall be paid from capital or income, and their decision shall be final." (Italics supplied.) The executor's determination as to net income was held binding on all the parties, including administrators with the will annexed, in whom the power was held vested for further exercise until the property should be turned over to the trustees, when they would become entitled to exercise it. The court refused to construe the will to mean that property turned over to the trustees as income should be treated by them as capital. It was held subject to their power under the quoted provision. The court said: "It is apparent that the testator intended to make article 4 of the codicil so comprehensive in its terms that at all times while his estate was in process of settlement some party charged with the settlement of the estate or with the administration of a trust would have the discretionary power therein granted." 167 N.E. at 283.

The case which most closely resembles the present one in its facts, including the language of the empowering provision and issues of law, is Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 626, 118 A.L.R. 834. The provision of the will in issue was: "The trustee under this instrument shall have full power and discretion to determine whether any money or other property received by him is principal or income without being answerable to any person for the manner in which he shall exercise that discretion." (Italics supplied.) The trustee, under power granted by another provision, had sold certain shares of stock at a profit over their cost. He sought instructions whether he could distribute this profit, under the quoted provision, to the life beneficiaries under the trust. By the established law of Massachusetts, gains resulting from the purchase and sale of securities composing the corpus of a trust were accretions belonging to the principal of the trust fund, rather than income, for purposes of distribution as between life beneficiaries and remaindermen. As stated by the court, the remaindermen did not "argue that a settlor has no power to confer a discretion upon his trustees to determine what is income and what is principal, but do contend that, under the trust instrument in question, the trustee has no power to determine, contrary to established rules of law in this Commonwealth, what money or other property received by him as trustee is principal or income." 16 N.E.2d at 628–629.

The argument, identical with that made here, was rejected. The court said: " 'Full power and discretion' to determine whether any money or other property received by the trustee is principal or income, in the light of attendant circumstances and the language of the trust instrument as a whole, would have little significance if construed to mean a discretion so to determine only in cases where there is no settled law to guide. * * * The court may properly have in mind that, when a settlor reposes a discretion in a trustee, he does so because he desires the honest judgment of the trustee, perhaps even to the exclusion of that of the court." (Italics supplied.) 16 N.E.2d 629.

[7] Pray v. Belt, U.S.1828, 1 Pet. 670, 7 L. Ed. 309; American Board of Commissioners v. Ferry, C.C.W.D.Mich.1883, 15 F. 696; Talladega College v. Callanan, 1924, 197 Iowa 556, 197 N.W. 635; Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834; Chase National Bank v. Chicago Title & Trust Co., Sup.Ct.1935, 155 Misc. 61, 279 N.Y. S. 327, affirmed, 1935, 246 App.Div. 201, 284 N.Y.S. 472, affirmed, 1936, 271 N.Y. 602, 659, 3 N.E.2d 205; In re Wells' Estate, 1913, 156 Wis. 294, 144 N.W. 174.

It is clear from these authorities that specification of particular funds or property is not necessary to rebut the presumptions applied when the will is entirely silent and make the power effective as to assets within the presumptive rules. The testator or settlor indicates his intention that they shall not apply by a general power to distribute principal as income and vice versa, to decide what is principal or income, or to determine whether any money or property is principal or income. If therefore Item Eleventh created a power of this general character, the presumptions prevailing in the District concerning stock dividends and "administration income" have no application. In my judgment, it had this effect.

As the majority note, the will was drawn by experienced and able attorneys. They have become the testatrix' individual fiduciaries. She directed that they also be employed as counsel during the administration of her estate and of the trusts created by the will because they "through long and intimate knowledge of my affairs and those of my family are best fitted to undertake this responsibility," and carry out the terms of her will. The language of the clause is not narrow.[8] It nowhere limits the "question" committed to the fiduciaries to questions of law. Had this been intended, it would have been simple and obvious to say so. The language is: "to decide finally any question that may arise as to what constitutes income and what principal." It is general, not limited or particular. It is coupled with a precatory direction that the question be decided "whenever feasible * * * in favor of the life-beneficiaries." These are words of broad discretion, not of narrow limitation.

This appears also from the context of the clause in Item Eleventh. The Item confers on the fiduciaries highly discretionary powers—to mortgage and sell real estate, and the whole or any part of the residuary estate; to fix the terms and conditions of sale "as they may think fit and proper"; to invest and reinvest the proceeds; and "to do all other acts and things whatsoever that may be necessary and proper in carrying out the terms" of the will. These broad powers were given by their author "not intending, however, by the giving of specific powers to limit those of a general nature." They involved matters of high business judgment, not merely technical or doubtful legal questions. In the midst of them, the clause in question appears. It is in strange company, if unlike them in scope. It marches as a pygmy among giants or as an equal with them. In my judgment, it is with comrades.

Purpose and circumstances also point to the same conclusion. Two things the testatrix had in mind when she included this clause with the others: (1) to avoid litigation; (2) to favor her life beneficiaries so far as possible. The latter was dominant throughout the will. The life beneficiaries were the primary objects of the testatrix' bounty, as shown by the facts surrounding the will's execution, the general scheme of bequests and devises, and her expressed favoritism for them. All were children or grandchildren, of middle age or beyond and without direct descendants capable of

---

[8] The Eleventh Item, omitting the provision for executors' and trustees' fees, is as follows:

"For the purpose of carrying out the provisions of this my will, I give unto my executors and trustees from time to time acting the following authority and powers, *not intending, however, by the giving of specific powers to limit those of a general nature:*—

"To retain as part of the principal of the trust estate hereby created any shares of stock or bonds or other investments of which I may be possessed at the time of my demise; *to decide finally any question that may arise as to what constitutes income and what principal,—it being my wish, however, that whenever feasible their decision be in favor of the life-beneficiaries named herein;* to sell or to mortgage any real estate which they may receive hereunder or later acquire; to sell the whole or any part or parts of my residuary estate, real or personal, at public or private sale and upon such terms and subject to such conditions as they may think fit and proper, and to invest and reinvest the proceeds of any such sale; to employ in connection with the administration of my estate and whenever necessary during the existence of the trusts herein created attorneys *Norman B. Frost and Frederic N. Towers, who, through long and intimate knowledge of my affairs and those of my family are best fitted to undertake this responsibility;* and to do all other acts and things whatsoever that may be necessary and proper in carrying out the terms of this my will. * * *" (Italics supplied.)

taking the corpus, and possibility of issue was remote though not absolutely extinct. The corporate remaindermen were only contingently so. The testatrix was not attempting to protect them to the utmost extent. The exact contrary was the case. They were not the natural or nearest objects of her bounty. When the will was executed, it was highly probable that the corpus of the trust would go eventually to them.[9] In these circumstances it is more consonant with the testatrix' emphatically expressed preference for the life beneficiaries and her desire to avoid litigation to construe the broad language of the clause to mean, not the narrow power to decide merely unsettled questions of law, but the discretionary one to make effective as wide a favoritism to her nearest kin as could be accomplished without undue injury to the estate and destruction of the general scheme of gifts. So construed, the clause would confer upon the exercise of the trustees' discretion the finality intended by the testatrix, since litigation could be successful only by showing an abuse of their discretion.[10] On the other hand, the opposite construction leaves open the possibility of litigation, since the question whether there is an unsettled legal question is not one upon which disagreement is either impossible or infrequent. And it leaves little which the clause can accomplish by way of favoring the life beneficiaries.

The broader construction would not give the fiduciaries power to destroy the trust, by converting income to principal and vice versa in their uncontrolled desire or whim. Such an argument was advanced and rejected in Dumaine v. Dumaine, supra. The court refused to infer that the power was so unlimited, but it also declined to emasculate the trustee's authority by bounding it with the settled rules of presumption.[11] It found the limitations upon the trustees' discretion, not in the rules applicable when the will is silent, but in their obligation "to exercise a 'sound judgment and a reasonable and prudent discretion,' Appeal of Davis, Appellant, 183 Mass. 499, 502, 67 N. E. 604, 605; that kind of 'power and discretion which inheres in a fiduciary relation and not that illimitable potentiality which an unrestrained individual possesses respecting his own property * * *.'" 16 N.E.2d 629. It is not necessary to state the ultimate limits of reasonableness[12] beyond which the fiduciaries may not go; but their discretion must be exercised in a manner consistent with their fiduciary obligation,[13] which requires not only informed and considered judgment rather than caprice, but due consideration for the preservation of the estate and of the general scheme of gifts, the interests of all concerned in the distribution, and the testatrix' wishes in relation to particular funds or property, as determined in the light of their long famil-

---

[9] At the time the will was executed testatrix' two daughters were 67 and 63 years old; one grandson was 43 years old and had been married 20 years without issue; the other grandson was 35 and had been married 10 years without issue; the granddaughter was 40 and unmarried.

[10] Cf. note 14 infra.

[11] "We do not think the clause in question confers an absolute and uncontrolled discretion. Nor do we think that it limits the trustee to the determination of the matter involved in cases where there is a question of doubt or no rule of law to guide him." 16 N.E.2d loc. cit. 630. Cf. also the portion of the opinion quoted supra in the text. "Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules." 2 Scott, Trusts (1939) 1276. And see Chase National Bank v. Chicago Title & Trust Co., Sup.Ct.1935, 155 Misc. 61, 279 N.Y.S. 327, affirmed, 1935, 246 App.Div. 201, 284 N.Y.S. 472, affirmed, 1936, 271 N.Y. 602, 3 N.E.2d 205; Id., 271 N.Y. 659, 3 N.E.2d 472, where it

was held that a trustee could ignore the usual rules of distribution of stock dividends because of an authorization to "determine all questions, whether any moneys, securities, properties, stock dividends, rights or other things, are to be treated as capital or income." 279 N.Y. S. at 345. The court there rejected the argument that the power could be exercised only within the limits prescribed by the rules of distribution. The power conferred in the present will is different only in that the testatrix, perhaps for fear the rule "expressio unius est exclusio alterius" would be applied to it, did not mention specifically stock dividends or "administration income." But cf. In re Talbot's Will, Surr.Ct. 1939, 170 Misc. 138, 9 N.Y.S.2d 806, with which compare Colt v. Duggan, S.D.N.Y. 1938, 25 F.Supp. 268.

[12] Cf. the authorities cited in note 14 infra.

[13] Cf. the authorities cited in Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d loc. cit. 629, 118 A.L.R. 834.

iarity with her affairs and desires. These conditions being fulfilled, the courts consistently refuse to interfere with the decisions made by the trustees,[14] when as here the direction is that their decision shall be final, recognizing that the very purpose of the settlor is to substitute their discretion for that of the courts.

I think, therefore, that the broader construction, which gives the fiduciaries discretionary, but not unlimited, power is the one intended by the testatrix, and this view seems to me to be supported by the language of the clause, its context in Item Eleventh and in the will, its paramount purposes of avoiding litigation and favoring the life beneficiaries, by the circumstances surrounding the execution of the will, and by the more pertinent authorities. The opposite view emphasizes the words "question * * * may arise" at the expense of the remaining language of the clause,[15] disregards the testatrix' expressed confidence in the business judgment of her individual fiduciaries, narrowly restricts their discretion under the clause, and thereby defeats both her purpose of favoring the life beneficiaries widely, and that of avoiding litigation. It may be added also that it is more than questionable whether the testatrix intended to bind her fiduciaries by a rule of construction (that relating to "administration income") which was not settled in this jurisdiction until long after her will became operative and her estate was in course of administration.

The view which I have taken, if accepted, would require consideration of the further question whether, upon the facts disclosed, the fiduciaries have exercised their discretion. I think there could be little doubt that they have done so as to the fund derived from "administration income," since the corporate trustee has indicated that it would exercise its discretion in favor of the life beneficiaries if it should be held that it has such discretionary power.

As to the stock dividends, however, it has indicated no such concurrence and the question would remain whether the trustees' discretion can be exercised by a majority of them or requires the concurrence of all. I do not regard Ubhoff v. Brandenburg, 1905, 26 App.D.C. 3, as foreclosing or deciding this question, since in that case all of the trustees had concurred in the action taken and the statement that less than all could not act was purely dictum. The formerly prevailing rule in other jurisdictions requiring unanimous action, except where modified by the terms of the trust or by statute,[16] has been changed by statute in some jurisdictions,[17] and the Uniform Trusts Act, § 11, adopted in 1937 by the National Conference of Commissioners on Uniform State Laws and since then by two

---

[14] Pray v. Belt, U.S.1828, 1 Pet. 670, 7 L.Ed. 309; American Board of Commissioners v. Ferry, C.C.W.D.Mich.1883, 15 F. 696; Talladega College v. Callanan, 1924, 197 Iowa 556, 197 N.W. 635; Mayberry v. Carey, 1929, 268 Mass. 255, 167 N.E. 281; Dumaine v. Dumaine, 1938, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834; In re Clark's Will, 1937, 275 N.Y. 1, 9 N.E.2d 753; Chase National Bank v. Chicago Title & Trust Co., Sup.Ct.1935, 155 Misc. 61, 279 N.Y.S. 327, affirmed, 1935, 246 App.Div. 201, 284 N.Y.S. 472, affirmed, 1936, 271 N.Y. 602, 3 N.E.2d 205; Id., 271 N.Y. 659, 3 N.E.2d 472; In re Matthews' Will, 1938, 255 App.Div. 80, 5 N.Y.S.2d 707; In re Wells' Estate, 1913, 156 Wis. 294, 144 N.W. 174; Restatement, Trusts (1935) §§ 187, 233(p); 2 Scott, Trusts (1939) § 233.5.

It may be that under no circumstances could the fiduciaries distribute the original shares of stock as income or cash dividends as corpus. No question has arisen concerning such items. In the absence of specific enumeration in the will some things are and always have been so clearly corpus or income that no course of litigation has been needed to establish presumptive rules concerning them. On the other hand, other assets, including stock dividends, "administration income," and gains made on the sale of securities, have required long courses of litigation to establish their presumptive character, often with diverse results in different jurisdictions. Possibly the line could be drawn reasonably between these two groups of assets, if it were necessary to hold that what may be called basic corpus could not be distributed as income, though that which by adjudication has become presumptively such could be.

[15] In contrast to the court's refusal to place similar emphasis upon the words "such portion" in the provision interpreted in Boyden v. Stevens, supra.

[16] See 2 Scott, Trusts (1939) § 194; cf. § 184; Restatement, Trusts (1935) §§ 194, 184.

[17] Ga.Code 1926, § 4(5); Smith-Hurd Ill.Rev.Stat.1935, c. 148, § 33; N.H.Pub. Laws 1926, c. 2, § 15.

states,[18] provides that "unless it is otherwise provided by the trust instrument, or an amendment thereof, or by court order, any power vested in three or more trustees may be exercised by a majority of such trustees." The old rule has been criticized as a survival of "mediaeval land law relating to joint tenancy," not "necessary or convenient in modern conditions."[19] I therefore regard this question as undetermined for this jurisdiction, and express no opinion concerning it.

But in my judgment Item Eleventh by clear implication modifies the rule of unanimity, if it exists, both in specifying that the trustees' decision shall be final and that "whenever feasible" it shall be exercised "in favor of the life-beneficiaries." These directions are more clearly consistent with action of the majority than with requiring unanimity, subject to the right of the dissenting trustee to show that the majority have acted in abuse of the trustees' discretion. In the absence of such a showing, to require unanimous action would create the litigation which the power was designed to avoid, in order to escape from a stalemate or from making the minority's decision controlling; and, in that event, the discretion of the court would be substituted for that of the trustees, a consequence not consonant with the testatrix' evident intention.[20]

I think the judgment should be affirmed.

---

[18] La.Gen.Stat. (Dart 1939) § 9850.43, Act La. No. 81, of 1938, § 43; Pub.Laws of N.C.1939, c. 197, pp. 445, 447, § 11.

[19] The learned draftsman of the Uniform Act comments upon the rule of unanimity: "The rule that all powers of trustees are held jointly, unless expressly made personal, is believed to be founded in the mediaeval land law relating to joint tenancy. It is not believed to be a necessary or convenient rule in modern conditions. In charitable trusts (possibly on account of the large size of some boards of trustees for charity) the rule is clear that a majority may exercise a power * * *." See also 3 Bogert, Trusts and Trustees (1935) § 554.

[20] Where the rule of unanimity prevails, and one trustee refuses to concur in the action of the majority, it is generally held that it is the duty of the others to apply to the court for instructions, and the court may order the dissenting trustee to act, "if it appears to be for the best interest of the trust." A recalcitrant trustee may be removed by the court. Restatement, Trusts (1935) § 194. It is said that a court will not order the dissentient trustee to act unless his failure or refusal to do so amounts to an abuse of discretion. 2 Scott, Trusts (1939) § 194. But if it be assumed that the majority do not abuse their discretion, in deciding to act, it is difficult to see how the minority's refusal to join can be otherwise than arbitrary. However this may be in the absence of specific directions that the trustees' decision be final and concerning the manner in which it shall be exercised, the application of these rules appears to be inconsistent with the existence of such directions.