## PROCTOR et al. v. AMERICAN SECURITY & TRUST CO. et al.

### No. 7058.

United States Court of Appeals for the District of Columbia.

Argued May 17, 1938.

Decided June 13, 1938.

---

H. Lee Boatwright, Jr., of Washington, D. C., for appellants.

Stanton C. Peelle and Dale D. Drain, both of Washington, D. C., and George Elliott, Guardian ad Litem for Minor remainderman, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This case is before us upon an agreed statement of facts. Stephen L'Hommedieu Slocum, a resident of the District of Columbia, died testate on December 14, 1933. He was possessed of a large estate, which, after satisfaction of just debts, specific devises and legacies, he devised and bequeathed to the American Security and Trust Company, in trust, with direction to the trustees to convert all the "rest, residue and remainder" of his estate into cash and sound securities and to divide this residue into equal shares, the net income of these shares to be paid to several named life beneficiaries, and with remainders over.

The will is very detailed and comprehensive. It consists of sixteen printed pages of the transcript. It is broken down into seventeen Items. It is explicit in respect of its specific bequests and devises, and disposition of the residuary trusts. Costs of administration, debts, specific devises and legacies amounted to approximately $800,000. The gross estate amounted to some $3,000,000.

Item I of the will directs the payment of debts and expenses. Items II to XV, inclusive, provide for certain bequests, devises and pecuniary legacies. Item XVI of the will is, in part, as follows:

"All the rest, residue and remainder of my property and estate, both real and personal, *. * *, of which I may die seized and possessed, or to which I may be entitled at the time of my death, * * *, I give, devise, bequeath and appoint as follows, namely: I direct my executors to make sale of all real estate which I may own at the time of my death, * * *,

excepting only that hereinbefore specifically devised, and also of any securities of a speculative character which I may own at the time of my death, as soon after my death as they may deem it reasonably practicable so to do without a sacrifice thereof, * * *. When the rest, residue and remainder of my property and estate aforesaid shall have been thus reduced to cash and sound securities, my executors shall divide the same into a sufficient number of equal parts or shares to cover and fulfill the following provisions, namely:

"(1) * * * I give and bequeath one (1) of the aforesaid equal parts or shares, unto the aforesaid American Security and Trust Company, its successors and assigns, as trustee, in trust, to hold the same with full discretionary powers of management, of sale and resale, of investment, exchange and reinvestment, and to keep the same invested, collect all revenue and income arising therefrom, and, after paying all such costs, charges and expenses as it may deem necessary or proper in the administration of this trust, to pay over the *net income* arising therefrom * * *, for and during the term of her natural life." (Italics supplied.)

The "equal parts or shares" of the "rest, residue and remainder" were given in trust to the American Security and Trust Company as a fund to provide the *net income* for the life beneficiaries, with remainders over.

During the course of administration, the securities of the estate, which were sold to raise money for the payment of the costs of administration, debts, and legacies, produced before sale earnings of $23,328.64. The sole question in this case is the proper disposition of this amount. The appellants contend that this amount should be considered income distributable to the life beneficiaries of the residuary trusts. Appellees maintain that it should be added to the residuary trust and become part of its corpus. The lower court found that it should, upon distribution to the trustee, be added to the corpus of the residuary trusts.

■ In the long ago, the life beneficiary of a residuary trust received no income during the administration of the estate. After payment of costs of administration, debts and legacies, the residue was transferred to the trustee. Income produced thereafter was paid to the life beneficiary. The reason for such rule, as generally expressed, was that during the period of administration

the residue had not been ascertained. All monies earned upon the property of the testator during the administration of the estate, not having been disposed of by will, were a proper part of the residue.

Life beneficiaries suffered hardships. Delay in the administration occurred through proper cause, or through inaction or non-action of the executor. It was then argued that the life beneficiary of a residuary trust was closer to the heart of the testator than the remainderman, as such life beneficiary had been named first to benefit from the residuary trust. And it was successfully contended that such life beneficiary should have the income from the clear residue from the date of testator's death.

It is the now accepted rule that, in the absence of controlling language in a will, the life beneficiary is entitled to the income of the *clear residue,* as afterwards ascertained, to be computed from the date of the death of testator. The early American case enunciating this rule is Williamson v. Williamson, 1837, 6 Paige, N.Y., 298, which discussed the early English cases. In that case the testator bequeathed to his wife the use of the residue and remainder of his personal estate, during her life or widowhood, with remainder to his three sons. We quote therefrom: "The result of the English cases appears to be, and I have not been able to find any in this country establishing a different principle, that in the bequest of a life estate in a residuary fund, and where no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the *clear residue, as afterwards ascertained,* to be computed from the time of the death of the testator." (Italics supplied) See Matter of Benson, 96 N.Y. 499, 48 Am.Rep. 646; Lawrence v. Littlefield, 215 N.Y. 561, 577, 109 N.E. 611.

In this jurisdiction it is settled that a life beneficiary of a residuary trust is entitled to income thereon from the date of testator's death. McLane v. Cropper, 5 App.D.C. 276; Reid v. Dodge, 44 App.D.C. 558.

The item of the will, XVI, with which we are here concerned, covers 9 printed pages of the transcript. In this item the testator provided for a conversion of all the "rest, residue and remainder" of his entire estate into cash and sound securities and a division into "equal parts or shares." These "equal parts or shares" were given in trust to the American Security and Trust Company which was to pay the income earned by this share to the named beneficiary. We take the "part" of which Margaret O. F. Proctor was beneficiary as typical of the careful way in which the testator devised and bequeathed his property. The will provided for the payment of the "net income" arising therefrom to her for life. Upon death, if there should be surviving issue, the trust was to cease, and the trustee was ordered to pay over such part or share,*"together with any undistributed accumulations of net income"* to the surviving issue. If the beneficiary should survive the testator but thereafter die leaving no issue surviving her, the "part" theretofore held in trust for her, *"Together with any undistributed accumulations of net income"* should be divided into two equal portions. One such portion was to be subdivided into halves. Each half was to be added to and become a part of one of the subsequently created "equal parts or shares" of the "rest, residue and remainder" of the estate. Then, there are elaborate interlocking directions to the end that the residuary trusts would not fail so long as the beneficiaries or their issue, all of whom were his kin, survived him.

There is nothing in the will to indicate that testator would prefer the first life beneficiaries to receive a larger sum during the administration of the estate than thereafter, or larger than that which subsequent life beneficiaries would receive; particularly when, by such increase of income during the administration of the estate, the corpus of the residuary trust would be diminished. There is nothing to indicate that such "windfall" to the life beneficiaries, during the course of administration, was intended. As intent is not expressly shown, we will quote further from the Williamson Case, supra, and then view the authorities:

"It was not the intention of the testator to give his wife the interest or income of his whole personal estate until the debts and legacies should be paid, or for the term of one year, and then the interest upon the residuary estate after that time. But it was his intention to give her the use or income of the same residuary fund the capital of which was to be distributed to his three sons upon her death or remarriage."

It is fair to say that there are two irreconcilable rules which have grown up

in this country in respect to the point involved. There is the general rule, supported by the decided weight of authority in this country, and, likewise, the English cases, that the earnings upon testator's property, derived during the course of administration, used to pay costs of administration, debts and legacies, if not disposed of by the express terms of the will, are added to the residuary trust as part of its corpus. Then there is the so-called Massachusetts rule, which crystallized in 1929, which holds that the earnings upon testator's property used to pay costs of administration, debts and legacies derived during the course of administration, if not disposed of by the express terms of the will, are distributable to the life beneficiary as income.

The general rule finds support in the courts of New York, Maryland, Connecticut, Kentucky, New Hampshire, Delaware, New Jersey and the English cases. The Massachusetts rule is followed in the courts of Rhode Island and North Carolina.

It is necessary, therefore, for this court to determine which rule shall prevail in this jurisdiction. The pointed question to be answered is whether the life beneficiaries of the residuary trusts are only entitled to receive the "net income" of such residuary trusts, as stated in the will, or whether, in addition to such "net income," they shall receive, as *income*, the earnings derived from property used to pay costs of administration, debts and legacies during the course of the administration of the estate.

We are of the opinion that the general rule is supported by better reason and we follow it in this jurisdiction.

We are unable to get away from the idea that when this testator set up these residuary trusts and directed that the "rest, residue and remainder" of his estate should be transferred to such trusts and that the life beneficiaries thereof were to receive the "net income" therefrom, he meant what he said. From the earliest decisions, as we read them, the "rest, residue and remainder" of an estate meant all property not expressly disposed of by the will. After subtracting the costs of administration, debts, specific devises and legacies from the entire estate then existing, that which remains is the "rest, residue and remainder." Thereupon such property was transferred to the residuary trust, and it was the net income from such trust that such life beneficiaries were entitled to receive.

In York v. Maryland Trust Company, 150 Md. 354, 366, 367, 133 A. 128, 132, 46 A.L.R. 231, the will of the testator directed that all the testator's debts should be paid out of his estate "as soon as the same can conveniently be done." It then bequeathed $5,000 to a hospital and $100,000 to the testator's wife, and then gave, devised and bequeathed "all the rest, residue and remainder" of his estate to the Maryland Trust Company in trust to pay "all charges and expenses necessary and requisite for the proper care, management and preservation of the trust estate," including reasonable compensation to the trustee. The will then directed the trustee to pay an annuity from the net income to the testator's mother-in-law, Mrs. Read, and it then provided that "the balance of said net income derived from said trust estate, * * * my said trustee shall pay over quarterly to my wife, Mary Read York, so long as she shall live." The court said:

"There is no provision requiring the payment of the income from the entire estate to the appellant. The will specifically limits her income to the balance of income received from the trust estate, and the trust estate is not the testator's gross estate, but 'the rest, residue and remainder' of his estate after the payment of the debts and specific legacies. Even if these provisions do not indicate clearly and positively an intention on the part of the testator to limit his wife's income to the income from his net estate, after the payment of debts and legacies, they certainly cannot be said to indicate in any way a contrary intention; and, as we saw above, in the absence of a contrary intention on the part of the testator exhibited in his will, the general rule is that a life tenant, though entitled to income from the death of the testator, is only entitled to the income on the residue of the estate.

"This principle, which is supported by the great weight of authority is clearly recognized in the Wethered Case, supra, [79 Md. 153, 28 A. 812] in which Judge Boyd said: 'Of course, the income on so much of the principal as must be sold and used for the purposes herein stated (payment of debts and expenses), will not be payable to the life tenants as the residue of the estate is lessened to the amount of the principal so used.' See, also, 40 Cyc. 1882, and many cases cited in notes."

In Bridgeport Trust Company v. Marie W. Fowler, 1925, 102 Conn. 318, 329, 330,

128 A. 719, the will gave the residue of the estate to the plaintiff in trust, one half to be held for the testatrix's daughter, the daughter to receive the net income thereof, in quarterly payments during her life. The court held (page 723):

"It is obvious that an executor can only approximate the sum that will be required for the payment of debts and expenses of settlement, before the time limited for the presentation of claims has expired. Also the claims presented may bear interest. The income from the fund used to pay debts may approximate the interest accumulating on the debts. Under this rule the income from such fund, if not used for the payment of debts, becomes a part of the corpus of the estate, replacing a part of the corpus taken in excess of the actual requirements."

In the case of Stanley v. Stanley, 1928, 108 Conn. 100, 109, 110, 142 A. 851, 853, the will directed the division of "all the rest, residue and remainder" of the estate into two equal parts, one of which was given in trust for the payment of the income to beneficiaries. After the death of the beneficiaries, the balance of the trust fund was to go to remaindermen. The court stated:

"The residue is that portion of an estate that remains after the payment of debts, legacies, and administration charges. Into it, and forming a part of it, must go all legacies which are void or have lapsed, or become impossible of fulfillment, and also the income and accretions of the estate which are undisposed of. The residue includes every part of the estate not otherwise disposed of by the will.

\* \* \* \* \* \*

"We are asked, in view of the conclusion reached as to the disposition of the undisposed of income, whether it became principal or income. The answer is necessarily involved in preceding answers. It became a part of the residue, and hence principal."

The Kentucky Court of last resort reversed the lower court which had adjudged the life beneficiary of a residuary estate entitled to receive as income amounts derived from income or earnings on property with which the executor had paid the costs of administration, debts and legacies. It seems to us that the Kentucky Court fully recognized that "rest, residue and remainder" was determined after the payment of costs of administration, debts and legacies, and that when so ascertained the life bene-

ficiary was entitled to receive, during her natural life, the net income thereof from the date of the death of the testatrix. We quote from its opinion:

"The words 'the rest, residue and remainder' indicate and define the estate to be held in trust by the executors for the life of Jane Grainger Pennebaker, and the term 'net income' definitely and unequivocally fixes the character of income which she is to be paid for her life by the executors. The plain, simple words of the will limit the income of Jane Grainger Pennebaker to the 'net income' on 'the rest, residue and remainder' of the estate. It is the duty of the executors to ascertain and determine the 'rest, residue and remainder' of the testatrix' estate, i. e. the funds on hand after the payment of the debts, burial expenses, cost of administration, including ad valorem taxes, the specific pecuniary bequests \* \* \* and also the set-up of the trusts. \* \* \* When the 'rest, residue or remainder' is thus ascertained and determined by them, Jane Grainger Pennebaker is entitled to and should be paid for and during her natural life the 'net income' arising therefrom from the date of the death of the testatrix." Grainger's Ex'rs and Trustees v. Pennebaker et al., 1933, 247 Ky. 324, 334, 335, 56 S.W.2d 1007, 1012.

The Delaware Court follows the general rule in determining the amount upon which interest shall be paid to the life beneficiary during the administration of the estate. It is the clear residue that is used. The income received from property sold to pay costs of administration, debts and legacies is not paid to life tenants, but is added to the corpus and becomes a part of the residuary trust. Equitable Trust Co. v. Kent, 1917, 11 Del.Ch. 334, 101 A. 875; Bradford v. Fidelity Trust Co., 1918, 12 Del. Ch. 56, 104 A. 777.

In White v. Chaplin, 1929, 84 N.H. 208, 209, 148 A. 21, the testator left his residuary estate to the trustee to hold in trust for the benefit of two persons, the will directing the trustee to pay to them the income "to be paid annually in equal shares" and also to each of them "two hundred dollars annually out of the principal of the estate" during their lives. The court held (page 23):

"The conclusion is that the income earned by the estate after the lapse of one year from the testator's death belongs to those entitled to the income of the residue as a part of such income, but that the income

earned during the year ensuing the testator's death is a part of the principal."

· The general rule is recognized in New Jersey, In re Rowland's Trustees, 1917, 87 N.J.Eq. 307, 101 A. 52; Berger v. Burnett, 95 N.J.Eq. 643, 123 A. 879; Trust Company of New Jersey v.· Glunz, 121 N. J.Eq. 593, 191 A. 795; Commercial Trust Company of New Jersey v. Gould, 105 N. J.Eq. 727, 149 A. 590; and also in England, Allhusen v. Whittell, 1867, L.R. 4 Eq. 295, 302; In re McEuen, 1913, 2 Ch. 704; In re Wills, 1915, L.Ch. 767, 778.

Another authority for the general rule may be found in the Restatement of the Law of Trusts, 1935, American Law Institute, Section 234 (g) p. 695, which we quote:

"g. Income on property used in paying legacies, debts ànd expenses. To the extent to which the income received by the executor during the period of administration is derived from property which is subsequently used in paying legacies and discharging debts and expenses of administration, and has not been applied to the payment of interest on such legacies, debts and expenses, the trustee is entitled to receive the same, but it should be added to principal and not paid to the beneficiary entitled to income." See also, 69 C.J. 943; 28 R.C.L. 355.

We·come now to a discussion of the Massachusetts rule, which is adverse to the general rule. In Old Colony Trust Company v. Smith, 1929, 266 Mass. 500, 165 N.E. 657, the testator directed the payment of his debts and other charges, bequeathed numerous legacies, and by article ten gave "the rest, residue and remainder" of his estate to the accountant in trust for investment and reinvestment, for collection and payment of "the income from said fund" as there specified, and for final distribution of the principal of the trust. The court stated, after a lengthy review of previous cases:

"In the light of these decisions of our own court covering so long a period, perhaps not expressly to the point here presented but very close to it, the conclusion is irresistible that the item here in question must be treated as income for distribution among those entitled thereto and not as capital to be held for the remainderman."

In the case of City Bank Farmers' Trust Co. v. Taylor, 53 R.I. 126, 163 A. 734, the court followed the Massachusetts rule. They met the issue squarely that the resi-

due is to be determined as of the date of the death of the testator. Likewise, the Massachusetts rule was followed in the case of Wachovia Bank & Trust Co. v. Jones, 1936, 210 N.C. 339, 186 S.E. 335, 105 A. L.R. 1189. However, in that case, Mr. Chief Justice Stacy, who dissented,·cites section 234 (g) of The Restatement of the Law of Trusts referred to, supra, and thereupon stated (186 S.E. 338): .

"This statement, which was prepared by noted scholars, judges, and lawyers, after an exhaustive study of the subject, has the merit of being supported by the English common-law rule and is supposed to be the law of this jurisdiction, unless or until changed·by statute. C.S. § 970. Moreover, it seems to accord more nearly with the intention of the testator as expressed in the will before us."

Under the will involved in the case at bar the life beneficiaries are only entitled to *"net income"* upon the "rest, residue and remainder." The Massachusetts rule must proceed upon the theory that all property of the testator at the date of his death is the "rest, residue and remainder," or that all property at the date of the death·of the testator is "rest, residue and remainder" until wanted. We cannot agree with either position. The earnings involved, to-wit, $23,-328.64, were not a part of the estate at the time testator died. As a matter of fact, the earnings involved were not in existence at the date of testator's death. Further, the earnings were derived from property that has never been, and never will be, a part of the residuary trusts. It is *net income* from the residuary trusts that the life beneficiaries are entitled to receive.

We find that the sum representing the earnings during the course of administration upon property used to pay costs of administration, debts and legacies is not expressly disposed of by the will and therefore it should be transferred to the residuary trust as a part of its corpus. With this treatment, every life beneficiary, whether original or a successor, would, for their respective lives, receive the incomes from such funds. Thereafter it would be found intact in the corpus of the residuary trusts available for the remaindermen.

Counsel for the appellants stress the complexity of computation involved under the general rule. It may be that the Massachusetts rule is the more simple in computation, but we do not feel that we should

break away from the long applied rule, supported by authority, reason and fairness to parties involved because of the difficulty in computing the amount of the trust funds. Moreover, the question of complexity urged by appellant is not before us for consideration. It was expressly stipulated in the court below by agreement of all counsel that should it be adjudged that the earnings derived from property used to pay costs of administration, debts and legacies should be added to the corpus of the residuary trusts, the full amount involved herein, $23,328.64 was the sum to be so added to corpus. We do not decide the method of computation.

The decree of the lower court is affirmed.