**FIRST NAT. BANK OF ATLANTA v. ALLEN, Collector of Internal Revenue.**

Civ. A. No. 558.

United States District Court
M. D. Georgia, Macon Division.

Nov. 8, 1949.

Spalding, Sibley, Troutman & Kelley, Atlanta, Ga., Furman Smith, Atlanta, Ga., of counsel, for plaintiff.

John P. Cowart, United States Attorney, Macon, Ga., T. Reese Watkins, Asst. U. S. Attorney, Macon, Ga., for defendant.

DAVIS, District Judge.

The plaintiff is a national banking association having its principal office in Atlanta, Fulton County, Georgia, and is the duly qualified and acting executor of the will of Conkey P. Whitehead, who died on November 2, 1940. The Whitehead will was probated in solemn form in the Fulton County Court of Ordinary.

In his will Mr. Whitehead first provided for the payment of his just debts as soon as practicable. In subsequent items he made several special bequests to named persons or organizations. Following these provisions, Item VI of the will provided as follows:

"I give, bequeath and devise all the rest, residue and remainder of my estate * * to the First National Bank of Atlanta, and its successors, in trust, * * * and I direct said Trustee to divide the residue of my estate into two equal shares, to be known as Share Number One, and Share Number Two."

Succeeding items of the will provided that the income from Share Number One should be paid to the testator's mother, Mrs. Lettie Pate Evans, during the term of her natural life, and at her death the said Share Number One should be delivered, absolutely and in fee simple, to the Lettie Pate Whitehead Foundation. The will further provided that the income from Share Number Two should be paid to the testator's wife, "during the term of her natural life, with remainder, absolutely and in fee simple, to any child or children of ours, or any descendant or descendants thereof who may survive her." This provision expressly included any posthumous child which might be born to his wife after his death. In the absence of issue, under the terms of the will, the remainder of Share Number Two, after the death of the testator's wife, was given, absolutely and in fee simple, to the Lettie Pate Whitehead Foundation.

No child was born to said decedent prior to his death nor has there been any posthumous issue of his marriage. As determined in previous proceedings, Allen, Collector of Internal Revenue v. First National Bank of Atlanta, 5 Cir., 169 F. 2d 221, these facts were known during 1940, which is the first of the two tax years here involved. Thus, under the provisions of the will, Share Number Two will go to the Lettie Pate Whitehead Foundation on the death of the decedent's wife.

The Lettie Pate Whitehead Foundation has been organized in accordance with the terms of the will and is, and will be, a charitable and educational corporation of the character described in Section 23(o) (2) of the Internal Revenue Code, 26 U.S. C.A. § 23(o) (2).

On December 30, 1940, the testator's mother, Mrs. Lettie Pate Evans, conveyed all her right and interest in and to the life estate in Share Number One of said residuary estate to the Joseph B. Whitehead Foundation, which is a charitable and educational corporation of the character described in Section 23(o) (2) of the Internal Revenue Code.

In December, 1940, the plaintiff herein, the executor of the will of Conkey P. Whitehead, estimated that one-sixth of the Whitehead estate would be required to pay the decedent's debts and taxes, the cost of administration, and the special bequests provided for in his will. During the tax year 1940, the income of the Whitehead estate was $238,057.66, one-sixth of which, or $39,676.26, was attributable to the portion of the estate which it was estimated would be required to pay debts, taxes, costs and special bequests. This one-sixth portion of the income was transferred to a special account and the balance of the income was paid to the life beneficiaries. The income to the estate during the tax year of 1941 amounted to $398,563.22. During that year $116,220.11, which was

found to be the sum earned by the property sold to pay debts, taxes, costs and special bequests, was transferred to a special account and the balance of the income was paid out to the life beneficiaries. During 1941, the property which the executor thought it necessary to sell to pay the above mentioned charges was actually sold. The income attributable to such property was found to exceed one-sixth of the estate's income which explains the transfer of the larger amount in 1941.

On December 31, 1941, the administration of the estate had not been concluded, the residue had not been determined and no part of the corpus of the estate had been turned over to the Trustee of the residue.

The plaintiff, as Executor, filed its income tax return for the years 1940 and 1941 and paid taxes thereon of $15,750.53 and $89,373.15, respectively, those figures representing tax on the undistributed income of the estate for those years. The plaintiff did not claim and was not allowed any deduction for the amounts of $39,676.26 and $116,220.11, which represented the income of that portion of the estate sold to pay debts, taxes, costs and special bequests, and which amounts were retained by the Executor.

On March 11, 1944, within the time provided by law, the plaintiff filed a claim for refund of $14,788.10 for 1940 and $76,388.70 for 1941, plus interest at 6% from the date of the payment of said taxes. These amounts represent the difference between the tax paid and the taxes plaintiff would have been required to pay, had they deducted the sums of $39,676.26 and $116,220.11. The plaintiff, in its claim for refund and in this action, claims that these amounts should have been deducted, since income of this nature does not belong to the life beneficiaries but becomes a part of the corpus and passes to the charitable remainderman.

Notice of the disallowance of the plaintiff's claim for refund for the year 1941 was mailed to plaintiff on February 7, 1946. Though more than six months have passed since the filing of the claim for refund for 1940, the Commissioner of Internal Revenue has not yet acted on said claim. The plaintiff was thus authorized to file this action. This action seeks a refund only of the tax paid on that portion of the income attributable to property sold prior to December 31, 1941 for the payment of debts, taxes, costs and special bequests, though the plaintiff, since that time, has been forced to sell other properties in order to fully pay all such charges.

■ This case was heard upon a stipulation of facts, which the Court approves. The scope of the case is limited to one question: Does income earned by property used for the payment of debts, taxes, cost of administration and special bequests become a part of the corpus and pass to the remainderman, or is it distributable as income to the life tenants?

Both parties concede that, under Section 162(a) of the Internal Revenue Code, 26 U.S.C.A. § 162(a), if the income here involved was properly treated by the Executor as an addition to the corpus, it thus belongs to charity and is non-taxable. On the other hand, it is conceded that if this income, under the law, should have been distributed to the life beneficiaries, it is taxable to the Estate. The parties further agree that this question is controlled by the law of the State of Georgia.

The Court is of the opinion that this question must be decided in favor of the plaintiff. This question was carefully explored by both parties, and there is clearly a split of authority in this country. But, since the Georgia law is controlling, I will first direct my attention to the only Georgia case in point, which has been brought to my attention.

■ In the case of Rachels and wife et al. v. Wimbish, 31 Ga. 214, decided in 1860, the Supreme Court of Georgia said, "When a residue of a personal estate is given generally to one for life, with remainder over, and no mention is made by the testator respecting the interest, nor any intention to the contrary, to be collected

from the will, the rule appears to be now settled by the recent cases, that the person taking for life is entitled to interest from the death of the testator, on such part of the residue bearing interest as is not necessary to be applied for the payment of debts." In the same opinion, the Court, quoting from Covenhoven v. Shuler, 2 Paige, N.Y., 122, 132, 21 Am.Dec. 73, said: "And to ascertain the amount of such residuary fund so as to apportion the capital and income properly between the remaindermen, and the tenant for life, the executor, upon settling the estate at the end of the year, must estimate the whole estate at what is then ascertained to have been its cash value, at the testator's death, after paying all debts, legacies and expenses of administration and other proper charges and commissions."

Relying upon the authorities cited therein, including Williamson v. Williamson, 6 Paige, N.Y., 298, 300, the Court held that the life tenant "is entitled to the income on the clear residuum, after deducting from the surplus of the estate a sufficiency for payment of debts and legacies, that is, that the debts and legacies be paid from the estate left by testator, and the income arising from the balance that shall be left, be paid to the life tenant from the death of the testator."

So far as can be ascertained, this case stands alone in Georgia as the only authority on the question. Though frequently cited as authority on other questions, the case has never been cited on this point. Though the government strongly contends that the issue now under consideration was not involved in the Rachels case, supra, the Court is of the opinion that this utterance of the Supreme Court of Georgia, unopposed by any semblance of authority, must be accepted as controlling.

Even in the absence of the Rachels case, this Court would not be willing to adopt a contrary rule. Since the case of Williamson v. Williamson, supra, the great weight of authority in this country has followed that decision which held that the life tenant was entitled to income only from the

clear residuum of the estate after the payment of debts and legacies. The New York Court, and the Georgia Court which subsequently followed its opinion, clearly felt that this was a proper statement of the Common Law. In Proctor v. American Security & Trust Co., 69 App.D.C. 70, 98 F.2d 599, 602, Judge Vinson (now Chief Justice of the Supreme Court), after reviewing the authorities, said: "From the earliest decisions, as we read them, the 'rest, residue and remainder' of an estate meant all property not expressly disposed of by the will. After subtracting the costs of administration, debts, specific devises and legacies from the entire estate then existing, that which remains is the 'rest, residue and remainder.'" Judge Vinson then said that this was the general rule followed by the majority of the courts, supported by better reason, and the one which would be followed in his jurisdiction.

Thus, even in the absence of the Rachels case, this Court finds no hesitancy in saying that the Georgia court would adhere to the Common Law rule as expressed by the majority of the jurisdictions which have decided the question. The Court recognizes the existence of a fairly modern doctrine established in Massachusetts but does not consider it controlling.

█ The only other point raised in this case was the applicability of Section 85-605 of the Georgia Code of 1933, which provides as follows: "The natural increase of the property shall belong to the tenant for life. Any extraordinary accumulation of the corpus—such as issue of new stock upon the share of an incorporated company—shall attach to the corpus and go with it to the remainderman."

Without elaboration, it will suffice to say that this section has no bearing on the question before the court.

The Commissioner was incorrect in his determination and the Plaintiff is entitled to recover.

The foregoing shall be taken as the Court's Findings of Fact and Conclusions of Law.