Frank C. WALDROP and William C. Shelton, Surviving Executors of the Estate of Eleanor Patterson, Deceased,

v.

The UNITED STATES.

No. 174–54.

United States Court of Claims.

Jan. 31, 1956.

Edmund D. Campbell, Washington, D. C., John C. Ristine, Washington, D. C., and Jackson, Nash, Brophy, Barringer & Brooks, New York City, and Douglas, Obear & Campbell, Washington, D. C., on the briefs, for plaintiffs.

Elizabeth B. Davis, Washington, D. C., with whom was H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs are the executors of the will of Eleanor Patterson, a resident of the District of Columbia, who died on July 24, 1948. They sue to recover $633,814.88 of the $7,476,927.10 of estate tax which they have paid to the United States.

The decedent's gross estate amounted to $16,839,459.50. By her will she made specific bequests to individuals amounting to $5,181,208.97, and bequeathed to various persons annuities having a commuted value of $659,508.66. She made a bequest of $229,406 to the American Red Cross which bequest was deductible for estate tax purposes. There were debts and administration expenses amounting to $1,666,205.05 which were also deductible. The entire balance of her estate she left to trustees in trust for charities. This balance before deducting Federal estate taxes amounted to $8,260,474.35. But the United States assessed an estate tax of $7,476,927.10 as we have seen, and the District of Columbia assessed a similar tax of $1,722,880.72 a total of such taxes of $9,199,807.82. The payment of these taxes more than exhausted the residue of $8,260,474.35 which would, but for the taxes, have been available for the charitable trust. This would have seemed to make it necessary to take some one million dollars out of the specific bequests in order to pay the estate taxes.

But the executors were able to obtain income on that portion of the gross estate which was ultimately used to pay the debts, and part of the taxes. That income amounted to $1,165,521.34, an amount sufficient to pay the balance of the taxes and leave $238,979.38 to go to the charitable trust.

The plaintiffs say that if the $1,165,521.34 had been added to the gross estate, the estate would have shown $1,039,040.78 available for the residue for charity, and that amount would have been deductible from the gross estate before estate taxes were assessed, and the taxes would have been reduced by 77% (the estate tax rate here applicable) of that amount, that is to say, by $633,814.88, the amount here sued for. Stated in another way, the $238,979.38 given above as the amount available for the residuary charitable trust, even if no deduction is allowed, is only 23% (100−77%) of the amount which would be available if the deduction were allowed.

The Government urges that the income produced by the estate after the death of the decedent is not, for estate tax purposes, a part of the gross estate. It cites Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 to the effect that such income cannot be subjected to the estate tax, and Maass v. Higgins, 312 U.S. 443, 61 S.Ct. 631, 85 L.Ed. 940 holding that this is so even where the executors elect, under section 811(j) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(j), to use the optional valuation date of one year after the testator's death. Hence, the Government says, since the post mortem income is not a part of the gross estate, and since the charitable deduction is, according to sec. 812(d) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 812(d), to be a deduction from the gross estate, it would be illogical to allow a deduction from the gross estate of assets not included in it, and which would not be taxed as a part of it even if they went to a private devisee.

The Government further urges that, from a practical standpoint, to allow a

charitable deduction where it cannot be determined at the time of the decedent's death would render any computation of the federal estate tax almost impossible. It cites the instant case in which when the estate tax return was made, no charitable deduction for the residuary gift was claimed, since there was no residue; when the first refund claim was filed, as of May 31, 1952, a charitable deduction of $95,436.93 was asserted; presently, because of the August 31, 1952 transfer of post mortem income to principal, a charitable deduction of $1,039,040.78 is asserted. The Government says that this process could go on indefinitely, so long as there were undistributed assets of the estate which might earn income. It cites Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 293, 93 L.Ed. 259, where the will permitted unlimited invasion of the corpus of the estate for the benefit of the decedent's mother during her life, and gave the remainder after her death to charity. The mother died three years after the decedent and in fact there had been no invasion of the corpus. The Court said:

"Nor do we think it significant that the trust corpus was intact at the mother's death, for the test of present ascertainability of the ultimate charitable interest is applied 'at the death of the testator.' Ibid. The charitable deduction is a matter of congressional grace, and it is for Congress to determine the advisability of permitting amendment of estate tax returns at such time as the probable vesting of the charitable interest has reduced itself to unalterable fact."

The plaintiffs stress the following language of section 812(d):

"If the tax imposed by section 810, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this paragraph, then the amount deductible under this paragraph shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes."

Stated perhaps more simply, this means that if the gift to the charity is a residuary gift, and if by the will or the local law specific or other legacies or devises are to be paid in full and the estate taxes are to be paid out of the residue, the charitable deduction will be only the amount which will be left in the residue after the taxes are paid. This statutory language was a "legislative reversal," Harrison v. Northern Trust Co., 317 U.S. 476, 63 S.Ct. 361, 87 L.Ed. 407, of the decision of the Supreme Court in Edwards v. Slocum, 264 U.S. 61, 44 S.Ct. 293, 68 L.Ed. 564. The decision in Edwards v. Slocum permitted a charitable deduction for the entire amount of the residue as it appeared before any deduction for estate taxes, even if after the payment of the taxes nothing, or little, would actually go to charity.

As we understand it, the advantage which the plaintiffs seek to draw from the statutory language last quoted above is this. They say that by the local law of the District of Columbia, as shown by the decision in Proctor v. American Security & Trust Co., 69 App.D.C. 70, 98 F.2d 599, post mortem income becomes a part of the principal of the estate. The plaintiffs say that, as such, it is available for the payment of debts, taxes, and administration expenses. When used for that purpose it maintains the level of the gross estate, leaving something in the residue for the charitable trust.

We see nothing very relevant in the Proctor decision. The question there was whether post mortem income earned during the period of administration and before the trust of the residue was set up, should go to the life tenants of the residue, or be added to the corpus of the residue, thus ultimately going to the remainderman. The case was decided on the basis of what the court supposed the

testator intended by the conventional language which he used.

The plaintiffs say that if the testatrix had specifically provided in her will that Federal estate taxes were to be payable in the first instance out of income accrued during administration, then the provision of section 812(d) quoted above would not be applicable, since the tax would not be paid out of the bequest to charity. They say that since under local law they could pay the taxes out of such income, and since by their bookkeeping entries of July 31, 1952, they did transfer these income funds to the principal account of the estate, the legal effect should be the same as if they had paid as much of the Federal estate tax out of income as the income funds amounted to.

It may be noted that the Federal estate taxes were paid almost entirely in 1949 and 1950, with a final payment of $52,820.95 on May 2, 1952, all before the bookkeeping entry made on July 31, 1952. It should further be noted that the executors, in their income tax returns for the estate for the years 1948, 1949, 1950 and 1951, claimed and were allowed deductions, under section 162(a) of the Internal Revenue Code, 26 U.S.C. § 162(a), because the income was paid to or permanently set aside for charitable organizations. These deductions amounted to $1,018,805.07 and reduced the estate's income taxes by as much as the amount here sued for.

This case may be simpler than the parties have made it. A residuary gift to charity which, at the time of the testatrix's death, seemed to be illusory because there wasn't going to be any residue, later takes on reality because of post mortem earnings of the assets of the estate. There is no question here of life tenant and remainderman. The additional money clearly goes to the residuary legatee, after the deficit in the prior claims is made up. The bookkeeping of the executors, whether they kept the post mortem earnings in a separate fund which they used to pay debts or funeral expenses or expenses of administration, or taxes, or whether they mingled them with the original assets of the estate out of which these expenses as well as legacies were paid, seems to us to be immaterial. In fact, when the accounts were cast up, there was that much more in the estate's funds, and some of it would constitute a residue for the charitable trust.

Should the estate tax accounting be reopened because of this probably unusual sequence of events? The gross estate of the decedent is the starting point for the computation of the estate tax. Income earned during administration is not a part of the gross estate for estate tax purposes, and is not taxable as such. Instead, it is taxable to the estate as income, and, as such, is subject to deductions, including unlimited deductions for such amounts of it as are destined for charity. The statutory scheme seems to contemplate separate treatment of this asset, though it will ultimately go to the same persons who, by the will or the law of descent, get the statutory "gross estate." The statutory provision for deductions from this income of charitable gifts seem to make the statutory scheme equitable, and to relieve any pressure upon us to depart from the statutory scheme to achieve a fair result.

The plaintiffs' petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.