John G. **BUCHANAN** et al.,
Plaintiffs,

v.

**UNITED STATES** of America.
Civ. A. No. 70–165.

United States District Court,
W. D. Pennsylvania.
May 28, 1974.

---

Paul G. Rodewald, David B. Buerger, K. Sidney Neuman, Pittsburgh, Pa., for plaintiffs.

Scott P. Crampton, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendant.

## OPINION

ROSENBERG, District Judge.

The plaintiffs, John G. Buchanan, John G. Buchanan, Jr. and Mellon National Bank and Trust Company, Executors of the Estate of Mabel Lindsay Gillespie, claim of the defendant, the United States of America, the sum of $21,089.71 as the erroneous sum of money which they paid to the Internal Revenue Service in accordance with its demand. The matter was submitted on briefs and the facts are undisputed.

Essentially the stipulated facts are as follows: that Mabel Lindsay Gillespie, the testatrix, died on October 2, 1967; that the plaintiffs were granted letters testamentary; that one of the plaintiffs so appointed, John J. Buchanan, Jr., died on March 22, 1970, and no successor has been or will be appointed; that by her will the decedent made numerous specific bequests to individuals and charities; that said will also directed that the residue of the estate be given in various shares to 42 charitable organizations, and further, that all death taxes also be paid from the principal of said residue; that all of these organizations are "charitable" for the purposes of the Federal Estate tax charitable deduction under 26 U.S.C. § 2055(a)(2); that on January 2, 1969, the plaintiffs filed the estate's federal estate tax return showing a taxable estate of $1,880,815.00, said amount being computed by subtracting from the gross estate of $17,715,482 the funeral and administrative expenses ($442,921.00), debts of the decedent ($105,105.00), charitable bequests ($15,774,667.00) and the standard exemption ($60,000.00); that in computing the charitable residue, which was reflected within the charitable deduc-

tion, the plaintiffs added to the amount actually available to charity at the date of death a further amount of some $33,182.00, said additional amount constituting the amount of interest at 3½% over 15 months on the funds designated for payment of death taxes, or alternatively, the differential between the amount of taxes actually paid and their date of death value; that the tax funds were used to pay Pennsylvania, Maryland and Federal death taxes; that each of these taxes was payable and was paid 15 months after death; that the value of the interest on these taxes over a period of 15 months at the legal rate of 3½%, as set out in Treasury Regulation Section 20.2031–7, was $33,182.00; that upon audit, the Internal Revenue Service disallowed the deduction of the additional $33,182.00 which resulted in the assessment of $20,127.72 additional estate taxes; that on November 11, 1969, the plaintiffs paid the alleged deficiency together with interest of $961.99; that on November 12, 1969, the plaintiffs filed for a refund of these monies but that nothing has yet been recovered; and that as a result the plaintiffs filed this suit and the resultant motion for summary judgment, which the defendant, the United States of America, opposed through its cross motion for summary judgment. The plaintiffs demand judgment against the defendant in the amount of $21,089.71, together with interest from November 5, 1969 and costs.

It is admitted that the deduction method used by the plaintiffs is unique and, to this court's knowledge, unprecedented. The plaintiffs propounded two different arguments to support their accounting, both of which were as vigorously and competently opposed by counsel for the defendant. Inasmuch as the case is novel and could presumably provide the basis for a radical departure from present estate accounting methods, I must analyze each of the arguments in accordance with whatever precedent can be gleened from the Revenue Code, the corresponding regulations and the case law.

(1) The plaintiffs' initial argument states that an amount due after death without interest (the death taxes) should be deducted from the residue at its date of death value, i. e., by deducting the allowable interest of 3½% on the tax funds over 15 months from the amount of taxes actually due. In the case at bar, for example, the date of death value of the taxes due was some $33,000.00 less than the actual amount of taxes paid. Thus by deducting the date of death value from the entire residue, the plaintiffs obtain $33,000.00 more available for the charitable deduction than if the actual amount of the taxes had been deducted.

In support of this contention, the plaintiffs argue that in cases such as Commissioner v. State Street Trust Company, 128 F.2d 618, C.A. 1, 1942, and Commissioner v. Maresi, 156 F.2d 929, C.A.2, 1946, the courts have upheld the present value theory in alimony payments and payments to be made as set forth in a divorce settlement, and which are to be paid after death. Further, argue the plaintiffs, the Internal Revenue did not question the present valuing of the specific charitable trusts which decedent had set up in other sections of the will.

The law is uncontradicted that for the purposes of the federal estate taxes "at the decedent's death his estate had the obligation of paying estate taxes, debts, charges and expenses of administration." Ballantine v. Tomlinson, 293 F.2d 311, 312 (C.A.5, 1961); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Viewed literally, this doctrine dictates that at the moment of decedent's expiration, the obligation to pay all the estate taxes arose. Although there was admittedly a 15 month post death period provided before the taxes must be actually paid, there was no obligation to refrain from paying those taxes until the 15 month period has run; they could be paid any time within that period. 26 U.S.C. § 6075 (through a 1970 amendment the time for filing has been

changed to 9 months); Treasury Regulation 20.6075–1.

Based upon the foregoing discussion, I conclude that the estate taxes must be deducted from the residue at their full value. It is recognized that in *State Street Trust Company, supra,* and *Maresi, supra,* the courts did allow deductions of post-death marital obligations at their present values. Yet both cases were based largely on the fact that the post-marital obligations due at periodic times were enforceable as a judicial decree or order and thus deductible for estate tax purposes under § 303(a, d) of the 1926 Internal Revenue Code and § 812(b) of the 1939 Act. Under these cases, each party, the deceased and the obligee, was bound by the mutual condition that the obligation to make payments arose at certain subsequent stated times. Presumably if for some specific reason the potential recipient was offered pre-payment of the obligation before the period in which the obligation became due, he or she could have the right to postpone such payment until such period.

Contrary to the above noted situations, the case at bar presents neither a judicial decree nor a future obligation in terms of periodic payment. Rather, through legislative grace, a 15 month period was given to provide for administration of the estate, accounting, and related matters. Certainly if the taxes were offered any time within that 15 month period, the Commissioner would have no legal basis for requiring post-ponement. Hypothetically, the taxes could thus be paid exactly at the moment of death with no actual interest benefits at all accruing to the charities.

To allow the plaintiffs to deduct only the date of death value of the taxes from the residue of the estate left to charity also presents the mathematical enigma of a whole being less than the sum of its parts. If, assuming *arguendo,* the plaintiffs are allowing to deduct the additional $33,000.00 as charitable, the Commissioner is confronted with a tax obligation which was paid on time in full, plus a charitable deduction which, totaling both figures, adds up to $33,000.00 more than the total amount left in the estate residuary at the determination date, the date of death.

Federal Regulation 20.2055–3(a) deals directly with the problem of death taxes payable from charitable transfers. This regulation sets forth the example of a $50,000 specific bequest to charity from which state inheritance taxes of $5,000 are to be paid. The resultant amount which could be used for a charitable deduction is $45,000.00 ($50,000.00 less $5,000.00). It further states that in any number of different instances where a charitable transfer is to be reduced by death taxes, one must deduct the "amount" of the taxes under Internal Revenue Code § 2055(c). Certainly given the specific example provided and the normal meaning of the word "amount", I cannot state that the death taxes deductible from the residue here should be less than the amount actually due and paid.

(2) The plaintiffs' second argument is that in computing the value of the charitable bequests for estate tax purposes, the value at the date of death of the 15 month income on funds held for payment of estate taxes, which will eventually go to charity, is ascertainable and should be included in the charitable deduction. In relation to this argument, the plaintiffs stress that the income includable in the charitable deduction is not the interest *actually* earned but only the date of death value calculated by multiplying the tax funds at the 3½% legal rate over a 15 month period.

 It is well settled law in the federal judiciary that the use of post-mortem income to satisfy charges against the charitable residuary bequest so as to increase the charitable deduction is not allowable. Waldrop v. United States, 137 F.Supp. 753, 133 Ct.Cl. 902 (1956); Alston v. United States, 349 F.2d 87, C. A.5, 1965. Though the plaintiffs claim that the taxes were in fact paid from the principal of the residue (as dictated by the will), an analysis of their computations as reflected by the federal estate

tax return would belie their contentions as an exercise in semantics.

As seen from the estate tax return, the plaintiffs reduce the residuary amount left to charity by the amount of $575,600.90 instead of the $601,304.25 actually paid in Federal death taxes, the difference representing the amount of interest which could be earned on the $601,304.25 over 15 months at the legal rate of 3½%. Since the amount actually deducted for payment of taxes was $25,703.35 less than that necessary to fully pay the tax obligations, the additional funds used for payment of the taxes must, at least in theory, have come from interest earned by the estate.

■ The plaintiffs argue that all the taxes were indeed paid in full from the principal of the estate residue. If this is so then the additional $33,000.00 claimed as a charitable deduction must have constituted interest. The plaintiffs cannot meet the dictates of the will—to pay the death taxes from the principal of the residue—and also take a charitable deduction for *more* than value of the residue minus the full amount of the taxes, without taking into account at least some post mortem income. No evidence has been presented as to whether or not the funds for tax payment were actually kept separate from the remainder.

A further point which must be considered is that by denying the additional $33,000.00 as a charitable deduction, this court is certainly not preventing the use of that money by charity. It has been admitted that the plaintiffs obtained at least $33,000.00 of interest from the tax funds which redounded to the benefit of the certainly worthwhile recipient causes. Since this interest was in reality earned post mortem, it would be reported as income though admittedly excluded from income taxation due to its charitable destination. It would be largesse in the extreme to allow the same amount of money to be reported as tax free post mortem income and further use it to increase the amount of the federal estate tax charitable deduction.

■ I recognize the plaintiffs' contention that it was not the actual post mortem interest which should be included with the charitable residue but the *right* to that interest, such right presumably arising at death. I must also recognize, however, that a main purpose of the rule against payment of taxes from post mortum income so as to increase the charitable deduction is the possibility that such income could be included on both the estate and income taxes. Whether one calls it "income" or a "right to income", there is only a single sum of money earned on the amount set aside for tax purposes over 15 months. Assuming *arguendo* income was not earned, and the plaintiffs were allowed to include the *potential* interest as a deduction, they would be receiving a charitable deduction for $33,000.00 which, in fact, was not being put to charitable uses. Thus the so-called "right to interest" or "income interest" is really an "interest expectancy" which, viewed from the date of death, is not certain of fulfillment.

Though it is true that the Commissioner has issued tables setting forth interest rates which could be used in evaluating the present value of future interest of charitable funds, Regulation 20.-2031.7, the tables were not intended for use in relation to tax funds. Those tables were proposed specifically for valuation of annuities, life estates, terms for years, remainders and reversions. In other words, what the plaintiffs are attempting here is to derive an extra benefit which is not authorized by the Internal Revenue Code on the basis of what they consider equivalent, for example, the present value of a life estate. The situation of future earned interest from death tax funds during the 15 month period of grace privilege allowed for the Code fits none of these situations.

Accordingly, the plaintiffs' motion for summary judgment will be denied and the defendant's cross motion for summary judgment will be allowed.