**FARMERS TRUST COMPANY, Executor under the Last Will and Testament of Glenn E. Todd, Deceased, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

Civ. A. No. 76–1339.

United States District Court, M. D. Pennsylvania.

Sept. 26, 1978.

William F. Martson, Carlisle, Pa., for plaintiff.

Paul J. Killion, Asst. U. S. Atty., Harrisburg, Pa., J. Brian Ferrel, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM

HERMAN, District Judge.

This action arises under the Internal Revenue Code of 1954 and involves a claim for refund pursuant to 26 U.S.C. § 7422. Jurisdiction to hear this claim is conferred by 28 U.S.C. § 1346(a)(1). The motions now under consideration are cross-motions for partial summary judgment.

The issue to be decided is whether Section 2055 of the Code requires that a charitable deduction be reduced by the maximum amount of possible Pennsylvania state inheritance taxes that could have been incurred upon the exercise of a power of appointment, when the power was not exercised before the date prescribed for filing the decedent's estate tax return and when no state taxes were in fact incurred. More simply stated, should a federal charitable deduction be reduced by an amount equal to the maximum possible state inheritance taxes for a power of appointment when none were actually incurred?

The resolution of this issue raises no genuine question as to any material fact and therefore disposition is proper under Rule 56 of the Federal Rules of Civil Procedure. Under the applicable sections of the Internal Revenue Code and the case law interpreting them, the Plaintiffs are entitled to a judgment in their favor. An order will therefore be entered granting partial summary judgment for the Plaintiff and denying the motion on the part of the Defendant.

The facts of this action are somewhat complex and need to be laid out in order to properly show the context of this decision. The Plaintiff is the executor under the Last Will and Testament of Glenn E. Todd, who died on July 4, 1973. The will, executed on October 9, 1972, provided for the establishment of two trusts. Decedent in item four of his will created a marital trust in favor of his wife, Mary Line Todd, and in item five a charitable remainder trust. The marital trust was to be funded with property of the estate equalling one half the amount of the "adjusted gross estate" as determined for federal estate tax purposes. The income from the marital trust by the terms of the will was payable to the decedent's spouse in quarterly installments for her life. Mrs. Todd was also given a testamentary power of appointment over the marital trust assets.

The power of appointment entitled Mrs. Todd to appoint the entire principal of the marital trust to her estate, her creditors, or other persons as she should designate in her sole, absolute, and unrestricted discretion. The will also provided that if Mrs. Todd failed to exercise the power of appointment over the marital trust assets, the assets were to pass into the charitable remainder trust.

The will further provided that all inheritance taxes which were payable by reasons

of the decedent's death were to be paid out of the principal of the residuary estate. The charitable remainder unitrust was to equal eighty percent of the probate estate after deducting debts and administrative expenses, personal effects, the value of the assets in the marital trust, and the amount of all state inheritance taxes attributed to property passing to Mrs. Todd by reason of decedent's death. Mrs. Todd died eighty-one days following her husband's death or on September 23, 1973. In her will, she specifically and expressly did not exercise any power of appointment given to her by her husband's will.

The federal estate tax return of Glenn Todd was filed on April 4, 1974 and a charitable deduction was taken for the total amount of the corpus of the charitable remainder unitrust which was $916,497.50. This figure was arrived at by deducting administrative expenses, of $130,302.77, personal effects of $1,200, marital trust assets of $942,253, and Pennsylvania Inheritance Taxes of $1,693.70 from the probate estate of $2,221,071.50. The total of $1,145,621.87 was then multiplied by the eighty percent factor to arrive at the deduction claimed. The Plaintiff did not include any diminutions for Pennsylvania inheritance taxes as to the marital trust property over which Mrs. Todd had a testamentary power of appointment.[1] The devolution of the property to the charities set forth in the decedent's will did not result in Pennsylvania inheritance tax liability as a charitable bequest is exempted by the applicable state statute, 72 P.S. § 2485–302.

The return was audited by the Internal Revenue Service and on June 20, 1975, a notice was sent to the Plaintiff by the District Director alleging a deficiency of $113,-294.30. The charitable deduction was disallowed on the basis that the maximum amount of Pennsylvania inheritance tax, fifteen percent, should have been charged against the power of appointment and subtracted from the probate estate prior to valuation of the charitable trust for deduction purposes. That is, that fifteen percent of the marital trust assets, $141,337.97, should have reduced the figure utilized in arriving at the charitable deduction.[2] The taxpayers paid the alleged deficiency of $113,294.30 and $9,029.40 in interest and filed a claim for refund with the District Director on February 23, 1976 which was denied.

The Defendant moved for partial summary judgment on the issue of Pennsylvania inheritance taxes by motion filed June 8, 1977, and on June 20, 1978 the Plaintiff moved for partial summary judgment on the same issue. The part of the complaint in issue is paragraph 11 which reads in part:

"The Commissioner also erroneously and illegally disallowed a deduction with respect to funds which (a) were bequeathed to charity, (b) vested in charity exempt from Pennsylvania taxes about 80 days after the testator's death by virtue of his wife's death, (c) vested in said charity prior to the filing of estate tax returns for either the testator's estate or that of his wife, and (d) were never utilized for payment of Pennsylvania inheritance taxes. . . ."

As one might anticipate, there is little precedent that specifically concerns the issue that is raised in this action. The statute and the examination of those few cases bearing some resemblance to the instant case do, however, point clearly and properly toward the decision reached here.

The pertinent section of the Code is 2055 which provides for the deduction from the gross estate of a decedent the amount of all

---

1. Also, no reduction was made for the life interest of Mrs. Todd on the marital trust as her death was arguably imminent at the time of her husband's death. This issue has not been included in the motions presently under consideration.

2. Under the provisions of the Pennsylvania Inheritance Tax Act, property which is subject to a power of appointment is subject to an inheritance tax. 72 P.S. § 2485–408. If a power is exercised in favor of a "Class A" beneficiary, an inheritance tax at the rate of fifteen percent is assessed. On the date of death of decedent, there were no possible Class A beneficiaries in favor of whom Mrs. Todd could have exercised her power of appointment.

bequests and transfers to charitable entities. Section (a) further provided in part at the time of the testator's death:

"For purposes of this subsection, the complete termination before the date prescribed for the filing of the estate tax return of a power to consume, invade, or appropriate property for the benefit of an individual before such power has been exercised by reason of the death of such individual or for any other reason shall be considered and deemed to be an irrevocable disclaimer with the same full force and effect as though he had filed such irrevocable disclaimer."

The other applicable section to this case is 2055(c) which reads in part:

"Death taxes payable out of bequests. If . . . inheritance taxes are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequest, legacies, or devises reduced by the amount of such taxes."

The purpose of section 2055 is to encourage testators to make charitable bequests. *Commissioner v. Estate of Sternberger,* 348 U.S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955). This fact is illustrated by section 2055(a) as the intent of the drafters is evidenced by the numerous entities that are in effect earmarked as being more worthy of funds than the government's coffers. Section (a) more specifically provides guidelines for those bequests and transfers that

justify a deduction from the value of the gross estate in arriving at the taxable estate. Within this scheme, the purpose of the section's second sentence, as quoted above, was to encourage the inclusion of a greater number of deductible bequests by extending the deadline to the date for filing the estate tax return rather than the harsh date of death rule.[3]

In the facts of the present case it is clear that Mrs. Todd's death, only eighty-one days after her husband's, and her failure to exercise the power of appointment granted to her by his will had the effect of being an irrevocable disclaimer to the assets of the marital trust. The ability to exercise the power of appointment had completely terminated long in advance of the date prescribed for the filing of the estate tax return. Her death occurred on September 23, 1973 and the return was not due under Section 6075 of the Code until nine months after her husband's death. Therefore, under a proper interpretation of this section, the assets over which Mrs. Todd had the power of appointment ought to be considered as going directly to the intended charitable beneficiaries.

After Mrs. Todd's death, the funds in the marital trust were bound to reach the charitable trust corpus, in accordance with the formula provided by decedent's will. Before her death, Mrs. Todd had the power, if not the actual ability,[4] to direct the funds away from organizations of charitable purpose. However, the section deems this irrelevant when in fact the possibility is completely terminated prior to the date for filing of the estate returns. Since the power is treated as completely terminated for purposes of computing the amounts passing

---

3. The date of death rule of former sections 812(d) of the 1939 Code was relaxed with the addition of the last sentence of Section 2055(a) which permits a disclaimer before the time prescribed for the filing of the estate tax return. For this reason decisions under former section 812(d) such as *City Nat. Bank and Trust Co. v. United States,* 203 F.Supp. 398 (D.C.1962), *aff'd* 312 F.2d 118 (6th Cir. 1963), *cert. den.* 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963) which did not consider death by a donee of a power to be the equivalent of an irrevocable disclaimer are no longer relevant. The rule is now opposite as provided in Regulation § 20.2055–2(c)(2) which states that a disclaimer is the complete termination of a power by death or otherwise within the period of time within which the estate tax return must be filed.

4. It is disputed if Mrs. Todd ever was competent enough to perform a legally responsible act. She suffered a heart attack the day after her husband's death and also suffered from Parkinson's Disease and numerous other medical infirmities.

to charities, it seems only proper to assume that any possible state inheritance tax liability should likewise be deemed outside the scope of the reduction required by section 2055. That is, because the funds of a power of appointment were considered as passing to a charity when disclaimed within the time allowed for filing of the estate return, it would be inconsistent to require a reduction for hypothetical state inheritance taxes when it is a known fact on the date the return is filed that no state inheritance taxes will ever be assessed concerning the terminated power. To require the taxpayer, as the Internal Revenue Service has in this case, to deduct an amount equal to the maximum state inheritance tax liability over assets covered by a completely terminated power defeats the purpose of the provision in section 2055(a).

■■■ Section 2055(c), as quoted above, also requires the holding arrived at in this opinion. It provides that all taxes payable out of a charitable bequest must reduce the bequest by the amount of such taxes. The obvious purpose of this provision is to insure that only the amount actually received by an exempt legatee be allowed as a deduction. The regulation specifically states that "Section 2055(c) in effect provides that the deduction is based on the amount actually available for charitable uses, that is, the amount of the fund remaining after the payment of all death taxes. 26 C.F.R. § 20.2055–3. The government argues that this section requires that all taxes that could possibly be payable out of a charitable bequest must be subtracted from the amount passing as a charitable deduction. It asserts that "payable" is not limited to taxes which are actually paid, however, this is a strained and incorrect reading of the section.[5]

Under a proper interpretation of the section the key language for purposes of this case is that the bequest to a charitable organization should be "reduced by the amount of such taxes".[6] The regulations likewise restate this language as follows "2055(c) provides that the sum deductible is the amount of the transferred property reduced by the amount of the tax".[7] It is clear from a reading of this language in accordance with proper statutory construction that the amount of taxes that are to reduce the charitable bequests are only those that have in fact been paid. The explicit statutory language discredits the government's argument that a hypothetical state inheritance tax should be deducted from the transferred property. In the instant case, no state inheritance taxes were incurred, the funds passing to the charitable entities were free of any state death taxes and therefore the amount of such taxes was zero rather than the hypothetical maximum state inheritance tax.

A fairly recent decision arrived at this same interpretation of the word "amount" in Section 2055(c). In *Buchanan v. United States,* 377 F.Supp. 1011 (W.D.Pa.1974), aff'd without opinion, 511 F.2d 1392 (3rd Cir. 1975), Judge Rosenberg held that only death taxes actually due and paid out of a charitable bequest, rather than a more theoretical discounted date of death value, constituted the proper basis for reducing the bequest for deduction purposes. In arriving at this conclusion the court looked to the example provided by the regulations dealing directly with the problem. Regulation 20.20553 states: "If $50,000 is bequeathed for a charitable purpose and is subjected to a state inheritance tax of $5,000, payable out of the $50,000, the amount deductible is $45,000." In concluding the court said "given the specific exam-

---

**5.** In this case it is disputed whether the taxes would have been considered payable out of the charitable bequest as the will provides that all state inheritance taxes are to be paid from the residuary. Resolution of this question is not necessary as under either interpretation the hypothetical Pennsylvania inheritance taxes should not be considered deductible from the funds entering the charitable corpus. It should

be noted that under the policy of the section, however, that only those taxes that in fact reduce the amounts passing to a charity should be deducted from the charitable deductions.

**6.** 26 U.S.C. § 2055(c) (emphasis added).

**7.** § 20.2055–3(a) (emphasis added).

ple provided and the normal meaning of the word 'amount' I cannot state that the death taxes deductible from the residue here should be less than the amount actually due and paid." *Id.* at 1014. In the instant case the rule is the same but the phraseology is that death taxes deductible from the residue should not be more than actually due and paid.

The Defendant essentially relies on the holdings of two cases in support of its decision and its motion, *Brook's Estate v. Commissioner,* 250 F.2d 937 (3rd Cir. 1958) and *Connecticut Bank and Trust Company v. United States,* 439 F.2d 931 (2nd Cir. 1971).[8] Unfortunately for the Defendant, these two cases require a different decision than that for which they are offered.

In *Brook's Estate* the testator, as here, left a will providing for two trusts, a marital deduction trust and a charitable trust. The charitable trust was funded by the residue of the estate and by the terms of the will was to be the source of payment of all estate and inheritance taxes. Under the testator's will his wife was bequeathed a general testamentary power of appointment over the marital deduction trust and on default of the exercise of this power the principal was to fall into the charitable trust. The Commission successfully argued that the charitable deduction was to be reduced to reflect not only the Pennsylvania inheritance taxes that had been paid, but also the maximum possible contingent liability for any additional taxes. This was due to the possibility that the wife could exercise her general power of appointment in a manner that might result in additional taxes being payable out of the charitable trust on the termination of the marital trust. The factual variances, however, require a different conclusion in the present case.

In *Brook's,* the donee of the testamentary power of appointment was still living at the

time the decision was written and apparently remained completely capable of exercising the power in a manner that would have resulted in Pennsylvania inheritance tax liability.[9] Also, the power, unlike the present case, had not been terminated prior to the return filing date. The court noted "we look at this problem as of the day the will became effective, that is, either the date of the death of [the testator] or the one year thereafter allowed for federal estate tax calculations." *Id* at 939. The taxpayer was therefore only able to argue that the donee would be advised to appoint the corpus of the marital trust in such a way that additional tax would be avoided. Without any assurance that this would be done, the court required the reductions of the possible contingent state tax liability because "we have a situation where at the critical dates no one could tell for a certainty or even with reasonable probability what the course of devaluation of the corpus of [the marital trust] would be" *Id* at 939.

In the present case, it is a certainty that no Pennsylvania inheritance taxes will be incurred because of the power of appointment given to Mrs. Todd and that the assets of the charitable trust will not at a later date be called on to bear the burden of any such state taxes. So unlike in *Brook's,* it is not necessary to take steps to insure that all of the funds deductible will in fact reach a charitable destination. Here, at the critical dates, it is an indisputable fact that no inheritance taxes will ever be assessed against the exercise of the power of appointment.

The other decision strongly relied on by the Defendant, *Connecticut Bank, supra,* is likewise clearly distinguishable. That suit was for a refund based on a release of a power of appointment by the testator's widow over a marital deduction trust several years after the filing of the return. State

---

**8.** *Brook's Estate* was cited in the notice of disallowance as sole authority for the denial of the charitable deduction as claimed and pertaining to this issue.

**9.** Judge Goodrich noted that almost any exercise of the power would have resulted in such tax liability as it had been placed in evidence that only one enterprise in the state qualified for the tax-free exemption at the time. *Id* at 939.

inheritance taxes had already been paid and deducted in accordance with Section 2055(c). On the release of the power of appointment the state taxes were refunded and the action by the executor claimed under 2055(c) that a refund was due on the federal estate taxes because of the reduction of the charitable deduction for the previously paid and refunded state taxes. Judge Friendly in writing for the court disallowed the refund since the release did not occur before the filing of the return.

The court noted in dicta that if the disclaimer had been made before the date prescribed for the filing of the estate tax return, the refund would have been justified under Section 2055(a). The reasons for the denial of refund was that the widow waited until years after the critical dates had passed to disclaim the power of appointment. Here, no such uncertainty exists at the critical dates and under the rationale of *Connecticut Bank* the Plaintiff is justifiably entitled to a refund equalling the amount disallowed because of the required reduction for state inheritance taxes.

 In summary, it was improper for the Internal Revenue Service to require a reduction for state inheritance taxes from the charitable deduction when it was known that none would ever be incurred. Section 2055(a) does not permit a charitable deduction to be reduced by a hypothetical state tax on a power of appointment when the power is terminated prior to the estate return filing date. Under Section 2055(c), only death taxes actually incurred should reduce the amount of a permissible charitable deduction. An appropriate order will be entered granting Plaintiff's motion for partial summary judgment and denying the Defendant's motion.